# SCOTT *v.* LATTIG.

ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 86. Argued December 13, 1912.—Decided February 3, 1913.

An error in omitting an island in a navigable stream does not divest the United States of the title or interpose any obstacle to surveying it at a later time.

Purchasers of fractional interests of subdivisions on the bank of a navigable stream do not acquire title to an island on the other side of the channel merely because the island was omitted from the survey.

Lands underlying navigable waters within the several States belong to the respective States in virtue of their sovereignty, subject to the paramount power of Congress to control navigation between the States and with foreign powers.

Each new State, upon its admission to the Union, becomes endowed with the same rights and powers in regard to sovereignty over lands under navigable waters as the older States.

An island within the public domain in a navigable stream and actually in existence at the time of the survey of the banks of the stream, and also in existence when the State within which it was situated is admitted to the Union, remains property of the United States, and even though omitted from the survey it does not become part of the fractional subdivisions on the opposite bank of the stream; and so *held* as to an island in Snake River, Idaho. *United States* v. *Mission Rock Co.*, 189 U. S. 391, followed; *Whitaker* v. *McBride*, 197 U. S. 510, distinguished.

17 Idaho, 506, reversed.

THE facts, which involve the title to an island in a navigable river and whether it remained public land after the survey, are stated in the opinion.

*Mr. Oliver O. Haga*, with whom *Mr. James H. Richards* and *Mr. McKeen F. Morrow* were on the brief, for plaintiff in error:

Public grants convey nothing by implication; they are to be strictly construed against the grantee, contrary to the usual policy of the law in the consideration of grants. Nothing passes by a public grant but that which is necessarily or expressly embraced in its terms. *United States* v. *Arredondo*, 6 Pet. 691; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 546; *Shively* v. *Bowlby*, 152 U. S. 1; *Martin* v. *Waddell*, 16 Pet. 367, 411; *Central Trans. Co.* v. *Pullman Pal. Car Co.*, 139 U. S. 24, 49.

Whenever the question in any court, state or Federal, is whether the title to land which has once been the property of the United States has passed from the Federal Government, that question must be resolved by the laws of the United States. *Wilcox* v. *Jackson*, 13 Pet. 498, 517; *Irvine* v. *Marshall*, 20 How. 558; *Gibson* v. *Chouteau*, 13 Wall. 92.

Congress alone has, under Art. IV, § 3 of the Constitution, the power to determine the manner of disposing of the public lands, and it has the sole power to declare the dignity and effect of titles emanating from the United States. *United States* v. *Gratiot*, 14 Pet. 526; *Bagnell* v. *Broderick*, 13 Pet. 436; *Downes* v. *Bidwell*, 182 U. S. 268; *Kean* v. *Calumet Canal & Imp. Co.*, 190 U. S. 466.

The United States holds the title to the beds, below high water mark, of the navigable streams within a Territory for the benefit of the whole people, and in trust for the State or States to be ultimately created out of such Territory. *Shively* v. *Bowlby*, 152 U. S. 1, 28; *Weber* v. *State Harbor Comrs.*, 18 Wall. 57; *Packer* v. *Bird*, 137 U. S. 661; *Knight* v. *United Land Ass'n*, 142 U. S. 161; *San Francisco* v. *Le Roy*, 138 U. S. 656; *McGilvra* v. *Ross*, 215 U. S. 70.

In the United States the law does not distinguish be-

tween tidal streams and non-tidal streams which are navigable in fact. *McGilvra* v. *Ross*, 215 U. S. 70; *Barney* v. *Keokuk*, 94 U. S. 324; *The Genessee Chief* v. *Fitzhugh*, 12 How. 443; *Shively* v. *Bowlby*, 152 U. S. 1.

Grants by Congress of portions of the public lands within a Territory to settlers thereon, though bordering on or bounded by navigable waters, convey of their own force title to the upland only, or what lies above ordinary high water mark. And such grants do not impair the title and dominion of the future State, when created, to the bed of the stream below ordinary high water mark. *Shively* v. *Bowlby*, 152 U. S. 1; *McGilvra* v. *Ross*, 215 U. S. 70; *Eldridge* v. *Tresevant*, 160 U. S. 452, 467.

The use of the shores of navigable streams and the right, title or interest of riparian proprietors, or the owners of the upland, to such shores and to the beds of the streams must be determined by the laws of the several States, subject only to the rights vested by the Constitution in the United States. *Shively* v. *Bowlby, supra; St. Anthony Falls Co.* v. *St. Paul*, 168 U. S. 349, 361; *St. Clair County* v. *Lovingston*, 23 Wall. 46, 68; *Barney* v. *Keokuk*, 94 U. S. 338; *Ill. Cent. R. Co.* v. *Chicago*, 176 U. S. 646, 660; *Pollard* v. *Kibbe*, 9 How. 471; *Packer* v. *Bird*, 137 U. S. 671; *Scranton* v. *Wheeler*, 179 U. S. 141, 187; *Mobile Trans. Co.* v. *Mobile*, 187 U. S. 479; *Pollard* v. *Hagan*, 3 How. 212.

The courts of the United States will construe the grants of the general Government without reference to the rules of construction adopted by the States for their grants, but whatever incidents or rights to the soil under navigable waters, or below high water mark, attach to the ownership of the upland conveyed by the Government will be determined by the States, subject to the condition that their rules do not impair the efficacy of the grants or the use or enjoyment of the property by the grantee. *Shively* v. *Bowlby; St. Anthony &c. Co.* v. *St. Paul*, and *McGilvra* v. *Ross, supra.*

Snake River in southern Idaho is a navigable stream. *Johnson* v. *Johnson*, 14 Idaho, 561; *Moss* v. *Ramey*, 14 Idaho, 598.

Whether a riparian owner holds title in fee to the center of a navigable stream, or to low water mark or high water mark must be determined by the laws of the State in which the upland is situated. *McGilvra* v. *Ross* and *Shively* v. *Bowlby, supra*.

The title to the bed and shores of non-navigable streams is vested in the owner of the upland, and where the opposite banks of a stream, not navigable, belong to different persons the stream and the bed thereof is common to both. Rev. Stat., U. S., § 2476.

The owner in fee of the bed of the river, or other submerged land, is the owner of any bar, island or dry land which may be subsequently formed thereon. *St. Louis* v. *Rutz*, 138 U. S. 226.

Islands formed in the stream before the admission of the State into the Union are subject to disposal by the Federal Government the same as other public lands. If they are formed after the admission of the State, the question whether they belong to the riparian owner, or are the property of the State, is governed by local law. 1 Farnum on Waters, p. 50; *United States* v. *Mission Rock Co.*, 189 U. S. 391; *Mission Rock* v. *United States*, 109 Fed. Rep. 763; *Steinbuchel* v. *Lane* (Kan.) 51 Pac. Rep. 886; *Shoemaker* v. *Hatch*, 13 Nevada, 261; *Granger* v. *Swart*, Fed. Cas. No. 5685.

Public agents cannot bind the Government beyond the terms of the statute under which they act. The Government is not bound. *Moffat* v. *United States*, 112 U. S. 34; *Kirwan* v. *Murphy*, 189 U. S. 35; *Horne* v. *Smith*, 159 U. S. 40.

The failure of a public land surveyor to survey an island of 138.15 acres of high and valuable agricultural land, not subject to inundation or overflow, does not enlarge the

title conveyed by the patents to the upland situated across a 400 foot channel from the island. *Horne* v. *Smith*, 159 U. S. 40; *Niles* v. *Cedar Point Club*, 175 U. S. 300; *Barnhart* v. *Ehrhart*, 33 Oregon, 274; *French-Glenn Live Stock Co.* v. *Springer*, 185 U. S. 47; *Security Land Co.* v. *Burns*, 193 U. S. 167; *Steinbuchel* v. *Lane* (Kan.) 51 Pac. Rep. 886; *Shoemaker* v. *Hatch*, 13 Nevada, 261; *Whiteside* v. *United States*, 93 U. S. 247; *In re Peterson*, 39 Land Dec. 566.

One receiving a patent for the full acreage of upland paid for will not be heard to insist that, by reason of the failure of the surveyor to note on the official plat the existence of an island of 138.15 acres of agricultural land, not subject to overflow, and situated across a 400 foot channel from the upland, he is entitled to the island also. Cases *supra* and *Lammers* v. *Nissen*, 4 Nebraska, 245; *Bissel* v. *Fletcher*, 19 Nebraska, 725; *Harrison* v. *Stipes*, 34 Nebraska, 431.

An island in existence at the time of the admission of the State into the Union, consisting of 138.15 acres of dry land not subject to overflow and adapted to ordinary agricultural uses, is not part of the river bed, and title thereto does not pass by implication or legal intendment to either the State or the riparian owner, but it may be claimed, surveyed and sold by the Government as other public lands. See *Re Peterson; Steinbuchel* v. *Lane* and *Shoemaker* v. *Hatch*, *supra*.

The Government as the original proprietor has the right to survey and sell any lands, including islands in the rivers or other bodies of water; and the failure of the surveyor to show an island on the official plat does not estop the Government from claiming it when its attention is directed to it. Cases *supra*.

Whether an island is open to homestead entry and settlement, and should therefore be surveyed, is a matter within executive judgment or discretion. *Carrick* v. *Lamar*, 116

U. S. 423; *St. Louis* v. *Rutz,* 138 U. S. 251; *Kirwan* v. *Murphy,* 189 U. S. 35, 56.

The Land Department is a tribunal appointed by Congress to decide certain questions relating to the public lands; and its decision upon matters of fact cognizable by it, in the absence of fraud or imposition, is conclusive everywhere else. *Lee* v. *Johnson,* 116 U. S. 48; *Marquez* v. *Frisbie,* 101 U. S. 473; *St. Louis Smelting & Ref. Co.* v. *Kemp,* 104 U. S. 636; *Moore* v. *Robbins,* 96 U. S. 530; *Baldwin* v. *Starks,* 107 U. S. 463; *United States* v. *Minor,* 114 U. S. 233; *Burfenning* v. *Chicago, St. P., M. & O. R. Co.,* 163 U. S. 321; *Johnson* v. *Drew,* 171 U. S. 93; *Moss* v. *Dowman,* 176 U. S. 413; *Gertgens* v. *O'Connor,* 191 U. S. 237.

The Land Department in issuing a patent must necessarily consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation. *Steel* v. *St. Louis Smelting Co.,* 106 U. S. 447; *Johnson* v. *Towsley,* 13 Wall. 72, 83; *French* v. *Fyan,* 93 U. S. 169, 172; *Quinby* v. *Conlan,* 104 U. S. 420, 426.

A decision rendered by the officers of the Land Department upon a question of fact is conclusive and not subject to be reviewed by the courts in the absence of a showing that such decision was rendered in consequence of fraud or imposition or mistake other than an error of judgment in estimating the value or effect of evidence, regardless of whether or not it was consistent with the preponderance of the evidence, so long as there is some evidence upon which the finding in question could be made. *Hartwell* v. *Havighorst,* 196 U. S. 635; *Jordan* v. *Smith,* 12 Oklahoma, 703; *Wiseman* v. *Eastman,* 21 Washington, 163; *Love* v. *Flahive,* 33 Montana, 348; *Parsons* v. *Venzke,* 4 Nor. Dak.

452; aff'd 164 U. S. 89; *Shepley* v. *Cowan*, 91 U. S. 330; 32 Cyc, 1020 *et seq.; Le Fevre* v. *Amonson*, 11 Idaho, 45; *White* v. *Whitcomb*, 13 Idaho, 490; aff'd 214 U. S. 15.

The decisions of the Land Department on the construction of the land laws are entitled to great respect at the hands of the court and should not be overruled unless they are clearly erroneous. *United States* v. *Healy*, 160 U. S. 136; *Robertson* v. *Downing*, 127 U. S. 607; *Hahn* v. *Cook*, 29 Nevada, 518; *Lavagnino* v. *Uhlig*, 26 Utah, 1; *O'Reilly* v. *Nixon* (Colo.), 113 Pac. Rep. 486.

The general rules as to the conclusiveness of decisions of the Land Department apply to decisions of the Commissioner of the General Land Office. *Rutledge* v. *Murphy*, 51 California, 388; *Shelton* v. *Keirn*, 45 Mississippi, 106; *Perry* v. *O'Hanlon*, 11 Missouri, 585; *Hartman* v. *Smith*, 7 Montana, 19; *Parsons* v. *Venzke*, 4 Nor. Dak. 452; aff'd 164 U. S. 89; *Glidden* v. *Union Pac. R. R. Co.*, 30 Fed. Rep. 660.

Courts will not entertain an inquiry as to the extent of the investigation by the Secretary of the Interior and his knowledge of the points involved in his decision of a contest in the Land Department, nor as to the methods by which he reached his determination. *De Cambra* v. *Rogers*, 189 U. S. 119.

When the Land Department accepted the application of plaintiff in error for a survey of the island in question and directed that said island be surveyed, platted and offered for sale as public land, it held in effect that it had not been the intention of the Government to surrender its title to said island under the patents to defendants in error, or their predecessors in interest, for the fractional lots situated across the channel from the island. And the decision of the Department on those questions has become *res adjudicata*, at least so far as the power of that Department extends. *In re Peterson*, 39 L. D. 566; *Case* v. *Church*, 17 L. D. 578; *Gowdy* v. *Gilbert*, 19 L. D. 17; *In re Palmer*, 20 L. D. 24; *In re Kuhlam*, 27 L. D. 68.

*Mr. Karl Paine*, with whom *Mr. Ira W. Kenward*, was on the brief, for defendants in error:

The common law of England, so far as it is not repugnant to, or inconsistent with, the Constitution or laws of the United States, in all cases not provided for in these revised codes, is the rule of decision in all the courts of Idaho. Section 18, Rev. Codes Idaho. This has been the law since 1864.

The decision in the present case is based upon the common-law doctrine of riparian ownership in subaqueous land. *Lattig* v. *Scott*, 17 Idaho, 506; following *Johnson* v. *Johnson*, 14 Idaho, 561; *Moss* v. *Ramey*, 14 Idaho, 598; *Fischer* v. *Davis*, 19 Idaho, 493; *Ulbright* v. *Baslington*, 20 Idaho, 539; *Donovan Co.* v. *Hope Lumber Co.*, 194 Fed. Rep. 643.

At common law "the owners of the banks prima facie own the beds of all fresh water rivers above the ebb and flow of the tide, even if actually navigable, to the thread of the stream, *usque ad filum aquæ.*" *Shively* v. *Bowlby*, 152 U. S. 1; *Hardin* v. *Jordan*, 140 U. S. 371; *Kinkead* v. *Turgeon*, 74 Nebraska, 580; Farnum on Waters, pp. 104–118; *Johnson* v. *Johnson*, *supra*, and case note, 24 L. R. A. (N. S.) 1240; *Goff* v. *Cougle*, 118 Michigan, 307.

The rights of a riparian owner upon a navigable stream in this country are governed by the laws of the State in which the stream is situated. *Weems Steamboat Co.* v. *People's Steamboat Co.*, 214 U. S. 345; *McGilvra* v. *Ross*, 215 U. S. 70; *Kansas* v. *Colorado*, 206 U. S. 46; *Iowa* v. *Garr*, 191 Fed. Rep. 257; Weil on Water Rights, 3d ed., § 898, n. 11.

A grant of land bounded by a stream, whether navigable in fact or not, carries with it the bed of the stream to the center of the thread thereof. The bed of the river could not be conveyed by the patent of the United States alone, but, if such is the law of the State, the bed will pass to the patentee by the help of that law, unless there is some special reason to the contrary as in *Ill. Cent. R. Co.* v.

*Illinois,* 146 U. S. 387. The fact that the river is a boundary between different States makes no difference. *United States* v. *Chandler-Dunbar Water Co.,* 209 U. S. 447; *Johnson* v. *Johnson, supra; Lattig* v. *Scott, supra.*

Grants by the United States of public lands bounded on streams, without any reservation or restriction of terms, are to be construed, as to their effect, according to the law of the State in which the land lies. *Grand Rapids & I. R. Co.* v. *Butler,* 159 U. S. 87; *Hardin* v. *Jordan, supra; Packer* v. *Bird,* 137 U. S. 661; *Johnson* v. *Johnson,* and *Lattig* v. *Scott, supra.*

Unsurveyed islands between the bank and the thread of the main channel of the river not omitted from survey by fraud or mistake pass with the mainland to the riparian patentee. *Johnson* v. *Johnson; Moss* v. *Ramey; Lattig* v. *Scott; Hardin* v. *Jordan; Grand Rapids & I. R. Co.* v. *Butler,* and *United States* v. *Chandler-Dunbar Co., supra; Whitaker* v. *McBride,* 197 U. S. 510; *St. Paul & P. R. Co.* v. *Schurmeier,* 7 Wall. 272; *United States* v. *Stinson,* 197 U. S. 200; *Mitchell* v. *Smale,* 140 U. S. 406.

For cases passing on the question of the ownership of islands in a navigable stream, when not necessarily dependent upon the question of whether the adjoining owner takes to the thread of the stream or merely to the shore, see *Holman* v. *Hodges,* 58 L. R. A. 673; *Webber* v. *Axtell,* 6 L. R. A. (N. S.), 194, note.

Private ownership of the bed of the stream or of the island, subject to the public rights, will not impair the interest of the public in the waters of Snake river. *United States* v. *Chandler-Dunbar Co.; Johnson* v. *Johnson; Lattig* v. *Scott, supra.*

Snake river is a navigable river and as such is a public highway and subject to the use of the public, not only to low-water.mark, but to high-water mark, and the riparian owner can in no way interfere with this use. *Johnson* v. *Johnson, supra.*

Except in cases of omission by accident, fraud or mistake, the United States has no authority to make surveys subsequent to patent of any land between the meander line and the thread of the main channel. *St. Paul & P. R. Co.* v. *Schurmeier,* 7 Wall. 272, 289; *Hardin* v. *Jordan,* 140 U. S. 371, 383; *Mitchell* v. *Smale,* 140 U. S. 406, 412, 413; *Moore* v. *Robbins,* 96 U. S. 530, 533; *Davis* v. *Wiebold,* 139 U. S. 507; *Grand Rapids R. Co.* v. *Butler,* 159 U. S. 87; *St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636, 646; *Lindsey* v. *Hawes,* 2 Black, 554, 560; *Cragin* v. *Powell,* 128 U. S. 691; *Webber* v. *Pere Marquette Boom Co.,* 62 Michigan, 635; *Shufeldt* v. *Spaulding,* 37 Wisconsin, 662; *State* v. *Lake St. Clair Fishing Club,* 127 Michigan, 587.

In cases of this kind, the meander line is not the boundary. *Johnson* v. *Hurst,* 10 Idaho, 308; *St. Paul & P. R. Co.* v. *Schurmeier,* 7 Wall. 272.

Ordinarily, the Government is bound by its own plats, and a patent issued referring to the official plats amounts to an adoption of such plats as a part of the description, and the natural monuments therein designated and shown are ordinarily controlling as to the boundary line. *Jefferis* v. *East Omaha Land Co.,* 134 U. S. 178.

At common law islands formed in a fresh water river, if altogether on one side of the dividing line, the *filum aquœ,* belong to him who owns the bank on that side. *Ingraham* v. *Wilkinson,* 4 Pick. 268; *Branham* v. *Turnpike Co.,* 1 Lea, 704.

Parties purchasing property shown by the United States surveys and plats to be riparian property should not be excluded from the water front. Cases *supra,* and *Bartlett Land Co.* v. *Saunders,* 103 U. S. 316, 319; *Lindsey* v. *Hawes,* 2 Black, 554; *St. Clair* v. *Lovingston,* 23 Wall. 46, 63; *Brown* v. *Huger,* 21 How. 305; *Mitchell* v. *Smale,* 140 U. S. 406; *Jefferis* v. *East Omaha Land Co.,* 134 U. S. 178, 195; *Boorman* v. *Sunnuchs,* 42 Wisconsin, 233; *Wright* v. *Day,* 33 Wisconsin, 264; *Watson* v. *Peters,* 26 Michigan,

517; *Richardson* v. *Prentiss*, 48 Michigan, 91; *Grand Rapids Ice Co.* v. *South Grand Rapids Ice Co.*, 102 Michigan, 236.

Where lands are bounded by streams, and monuments on the banks are stated to be corners, the true corner is held to be the point in the middle thread of the stream opposite the given monument. *Luce* v. *Carley*, 24 Wend. 453; *Seneca Nation* v. *Knight*, 23 N. Y. 498; *St. Clair* v. *Lovingston*, 23 Wall. 46, 63; *Cold Spring Iron Works* v. *Tolland*, 9 Cush. 495; *Newton* v. *Eddy*, 23 Vermont, 319; *McCullock* v. *Aten*, 2 Ohio, 307; *Handly* v. *Anthony*, 5 Wheat. 375, 380; *Buck* v. *Squires*, 22 Vermont, 494.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a suit in the District Court of Canyon County, Idaho, to quiet the title to Poole Island in the Snake river. The plaintiff, Lattig, claimed the northern part by reason of his ownership of lands on the east bank of the river and rested his claim to the southern part upon adverse possession. One of the defendants, Scott, claimed the entire island under the homestead law of the United States, and the other defendant, Green, claimed the southern part by reason of his ownership of lands on the east bank of the river, adjoining those of Lattig. Following a trial of the issues, a decree was entered sustaining Lattig's claim to the northern part and Green's to the southern, and quieting their titles against the claim of Scott. The Supreme Court of the State affirmed the decree, 17 Idaho, 506, and the case was then brought here.

The material facts are as follows: Snake river is a navigable stream and at the place in question is the boundary between the States of Oregon and Idaho. It flows northward past Poole Island in two channels, one on either side, and has a fall of 6 feet from one end of the island to the

other. The channel on the western or Oregon side is about 1,000 feet wide, and the one on the eastern or Idaho side is approximately 300 feet. The island is on the Idaho side of the thread of the stream, is over a mile in length, is from 500 to 1,200 feet in width, and has an area of 138.15 acres. It has well-defined banks extending from 3 to 5 feet above high water, is mostly covered with a growth of wild grass, sage brush and small timber, bears undoubted evidence of permanency and of having been there many years, and concededly was in the same condition as now in 1880, which was several years before Idaho was admitted into the Union and before the lands on the east bank of the river passed into private ownership. Those lands were surveyed in 1868, and the field notes and plat of the survey showed that the bank on that side of the river was meandered in the usual way and that the sections and subdivisions bordering thereon were fractional. The island was not mentioned in the field notes or plat. Lattig and Green severally own the fractional subdivisions on the east bank opposite the island under United States patents issued in 1894 and 1895, which describe them as containing 73.30 and 98.75 acres, respectively, "according to the official plat of the survey of said lands returned to the General Land Office by the surveyor general." The northern part of the island, which is opposite the lands of Lattig, contains 54.75 acres, and the southern part, which is opposite the lands of Green, contains 83.40 acres. Scott settled upon the island, as unsurveyed public land, in the early part of 1904, with the purpose of acquiring the title under the homestead law of the United States (see act May 14, 1880, 21 Stat. 141, c. 89, § 3; Rev. Stat., § 2266), and has ever since resided on and occupied the island and improved and cultivated portions of it. In 1906 it was surveyed as public land by direction of the Commissioner of the General Land Office, and after this survey was approved and the plat

filed Scott tendered, in the regular way at the proper land office, an application to enter the island as a homestead in virtue of his prior settlement, and the application was duly accepted.  It is said in the brief in his behalf that after the trial in the District Court his homestead claim was carried to completion and a patent was issued to him, but as this is not shown on the record it may be passed without other notice.

As it is manifest that the island, if in existence at the time of the survey in 1868, was then public land of the United States, and also that, if it continued to be public land in 1904, Scott initiated and acquired a valid claim to it under the homestead law, we will come at once to the reasons advanced for holding, as did the state court, that it ceased to be public land before 1904, viz., its omission from the survey of 1868, the admission of Idaho as a State in 1890, and the disposal of the lands on the east bank of the river in 1894 and 1895.

In making the survey of 1868 it was the duty of the surveyor, if the island was there at the time, to ascertain its exact location, to meander its exterior boundary, and to enter both in the field notes (Manual of Surveying Instructions of 1855, pp. 12–14; Act of May 30, 1862, 12. Stat. 409, c. 86), and therefore the absence of such an entry, as also of any representation of the island on the plat constructed from the field notes, naturally suggests that the island may not then have been in existence.  But this suggestion is effectually refuted by the size, elevation and appearance of the island, the character and extent of the vegetation thereon, and the conceded fact that in 1880, only 12 years after the survey, it was in the same condition as now.  That it was there at the time of the survey seems certain, although that is not so important as its existence when Idaho became a State.  Of course, the error in omitting it from the survey did not divest the United States of the title or interpose any obstacle to sur-

veying it at a later time. Neither was the error calculated
to induce purchasers of the fractional subdivisions on the
east bank to believe that by paying for the 73.30 and 98.75
acres in those tracts they would get, respectively, 54.75
and 83.40 acres more on the island on the other side of
the 300-foot channel. *Horne* v. *Smith*, 159 U. S. 40; *Niles*
v. *Cedar Point Club*, 175 U. S. 300, 306.

Coming to the effect to be given to the admission of
Idaho as a State and to the disposal of the fractional sub-
divisions on the east bank, it is well to repeat that Snake
river is a navigable stream, for there is an important
difference between navigable and non-navigable waters
in such a connection. Thus, Rev. Stat., § 2476, which is
but a continuation of early statutes on the subject (Acts
May 18, 1796, 1 Stat. 468, c. 29, § 9; March 3, 1803,
2 Stat. 229, c. 27, § 17), declares: "All navigable rivers,
within the territory occupied by the public lands, shall
remain and be deemed public highways; and, in all cases
where the opposite banks of any streams not navigable
belong to different persons, the stream and the bed thereof
shall become common to both;" and of this provision it
was said in *Railroad Company* v. *Schurmeir*, 7 Wall. 272,
288, "the court does not hesitate to decide, that Congress,
in making a distinction between streams navigable and
those not navigable, intended to provide that the common
law rules of riparian ownership should apply to lands
bordering on the latter, but that the title to lands border-
ing on navigable streams should stop at the stream, and
that all such streams should be deemed to be, and remain
public highways." Besides, it was settled long ago by
this court, upon a consideration of the relative rights and
powers of the Federal and state governments under the
Constitution, that lands underlying navigable waters
within the several States belong to the respective States
in virtue of their sovereignty and may be used and dis-
posed of as they may direct, subject always to the rights

of the public in such waters and to the paramount power of Congress to control their navigation so far as may be necessary for the regulation of commerce among the States and with foreign nations, and that each new State, upon its admission to the Union, becomes endowed with the same rights and powers in this regard as the older ones. *County of St. Clair v. Lovingston,* 23 Wall. 46, 68; *Barney* v. *Keokuk,* 94 U. S. 324, 338; *Illinois Central Railroad Co.* v. *Illinois,* 146 U. S. 387, 434–437; *Shively* v. *Bowlby,* 152 U. S. 1, 48–50, 58; *McGilvra* v. *Ross,* 215 U. S. 70.

Bearing in mind, then, that Snake river is a navigable stream, it is apparent, first, that on the admission of Idaho to statehood the ownership of the bed of the river on the Idaho side of the thread of the stream—the thread being the true boundary of the State—passed from the United States to the State, subject to the limitations just indicated, and, second, that the subsequent disposal by the former of the fractional subdivisions on the east bank carried with it no right to the bed of the river, save as the law of Idaho may have attached such a right to private riparian ownership. This is illustrated by the statement in *Hardin* v. *Shedd,* 190 U. S. 508, 519: "When land is conveyed by the United States bounded on a non-navigable lake belonging to it, the grounds for the decision must be quite different from the considerations affecting a conveyance of land bounded on navigable water. In the latter case the land under the water does not belong to the United States, but has passed to the State by its admission to the Union. . . . When land under navigable water passes to the riparian proprietor, along with the grant of the shore by the United States, it does not pass by force of the grant alone, because the United States does not own it, but it passes by force of the declaration of the State which does own it that it is attached to the shore." *United States* v. *Chandler-Dunbar Co.,* 209 U. S. 447, 451, is to the same effect.

But the island, which we have seen was in existence when Idaho became a State, was not part of the bed of the stream or land under the water, and therefore its ownership did not pass to the State or come within the disposing influence of its laws. On the contrary, although surrounded by the waters of the river and widely separated from the shore, it was fast dry land, and therefore remained the property of the United States and subject to disposal under its laws, as did the island which was in controversy in *Mission Rock Co.* v. *United States,* 109 Fed. Rep. 763, 769–770, and *United States* v. *Mission Rock Co.*, 189 U. S. 391.

We think the cases relied upon by the defendants in error do not make for a contrary conclusion. *Railroad Company* v. *Schurmeir*, 7 Wall. 288, expressly recognizes "that proprietors of lands bordering on navigable rivers, under titles derived from the United States, hold only to the stream." In *Grand Rapids & Indiana Railroad Co.* v. *Butler*, 159 U. S. 87, the evidence left it uncertain whether the so-called island was more than "a low sand bar, covered a good part of the year with water," at the time of the survey of the adjacent lands, which was in the year of the State's admission to the Union, and the court said (p. 95): "We have no doubt upon the evidence that the circumstances were such at the time of the survey as naturally induced the surveyor to decline to survey this particular spot as an island. There is nothing to indicate mistake or fraud." *United States* v. *Chandler-Dunbar Co.*, 209 U. S. 447, 451, is sufficiently distinguished by the following excerpt from the opinion: "The islands are little more than rocks rising very slightly above the level of the water, and contain respectively a small fraction of an acre and a little more than an acre. They were unsurveyed and of no apparent value. We cannot think that these provisions excepted such islands from the admitted transfer to the State of the bed of the streams surrounding them." And *Whitaker* v. *McBride*, 197 U. S. 510, which

related to a small island, in a non-navigable river, which the Land Department of the United States had expressly refused to survey, requires no other notice than to quote the following from the opinion (p. 515): "It must also be noticed that the Government is not a party to this litigation, and nothing we have said is to be construed as a determination of the power of the Government to order a survey of this island or of the rights which would result in case it did make such survey. . . . Our conclusion, therefore, is that by the law of Nebraska, as interpreted by its highest court, the riparian proprietors are the owners of the bed of a stream to the center of the channel; that the Government, as original proprietor, has the right to survey and sell any lands, including islands in a river or other body of water; that if it omits to survey an island in a stream and refuses, when its attention is called to the matter, to make any survey thereof, no citizen can overrule the action of the Department, assume that the island ought to have been surveyed, and proceed to occupy it for the purposes of homestead or preëmption entry. In such a case the rights of riparian proprietors are to be preferred to the claims of the settler."

For the reasons given the decree is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*