UNITED STATES of America,
Plaintiff,

v.

Clyde E. WALLACE and Louise J. Wallace, Defendants.

No. 2092.

United States District Court
D. Idaho, N. D.

Oct. 2, 1957.

**932**

Ben Peterson, U. S. Dist. Atty. for District of Idaho, Boise, Idaho, for plaintiff.

Glenn E. Bandelin, Sandpoint, Idaho, for defendants.

FRED M. TAYLOR, District Judge.

At the conclusion of the trial of this cause, before the Court without a jury, counsel for the respective parties waived oral argument and said matter was taken under consideration by the Court. Counsel were granted time within which to file briefs, and said briefs have been filed.

A portion of the facts were stipulated by counsel, which stipulation is on file herein, and in addition thereto oral and documentary evidence was introduced.

Counsel for defendants, in his brief, has admitted that the Withdrawal Order of December 16, 1908, is valid. It is also admitted that defendants did not have a permit from the plaintiff, United States, to occupy the land in question. Therefore, defendants' right, if any, to the possession and occupancy of the land must be based on whatever right they may have acquired by the filing of a mining claim, the boundaries of which are shown by Plaintiff's Exhibit No. 18.

Def ndants contend that the land embraced within the boundaries of the mining claim was subject to location because it was and is a part of the bed of the Moyie River, a navigable stream, and thus owned by the State of Idaho.

It is fairly well settled that the State owns and controls the bed of a navigable stream, even though the Federal Government may control the waters flowing therein under the Commerce Clause of the Constitution of the United States. Const. art. 1, § 8, cl. 3. Many streams have been held by the courts to be navigable which might seem to be non-navigable.

In Scott v. Lattig, 1913, 227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490, the Supreme Court of the United States held the Snake River to be a navigable stream. At 33 S.Ct. at pages 243–244, the Court said:

"* * * (It) was settled long ago by this court, upon a consideration of the relative rights and powers of the Federal and state governments under the Constitution, that lands underlying navigable waters within the several states belong to the respective states in virtue of their sovereignty, and may be used and disposed of as they may direct, subject always to the rights of the public in such waters and to the paramount power of Congress to control their navigation so far as may be necessary for the regulation of commerce among the states and with foreign nations * * *."

In United States v. Applachian Electric Power Company, 1940, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243, it was held that a stream would come under Federal jurisdiction even though it was not navigable in its natural state and in spite of falls, rapids, and other obstructions, provided it could or might be made subject to navigation (if only for the floating of logs or small boats) by means of locks, artificial channels, or other "reasonable improvements". In this regard the Court stated as follows at 61 S.Ct. at pages 299–300.

"To appraise the evidence of navigability on the natural condition only of the waterway is erroneous. Its availability for navigation must also be considered. * * * A waterway, otherwise suitable for navigation, is not barred from that classification merely because artificial aids must make the highway suitable for use before commercial navigation may be undertaken. * * * The power of Congress over commerce is not to be hampered because of the necessity for reasonable improvements to make an interstate waterway available for traffic. * * * There has never been doubt that the navigability referred to in the cases was navigability despite the obstruction of falls, rapids, sandbars, carries or shifting currents."

This decision was by a divided court, but, nevertheless is the law of the land. Two dissenting Justices pointed out the implications and the rule established by the majority of the Court as follows:

"If this test be adopted, then every creek in every state of the Union which has enough water, when conserved by dams and locks or channelled by wing dams and sluices, to float a boat drawing two feet of water, may be pronounced navigable because, by the expenditure of some enormous sum, such a project would be possible of execution. In other words, Congress can create navigability by determining to improve a non-navigable stream."

██ On consideration of the evidence in the case at bar, and in light of the above and other decisions of the Supreme Court of the United States, it is the opinion of this Court that the Moyie River is a navigable stream. The stream, however, and the bed thereof is only that which is within its ordinary and natural banks.

██ In order to decide the principal question involved in this case it must be determined from the evidence what is, at the place in question, the bed of the Moyie River. The evidence indicates that at various times during flood seasons the river overflows its banks, inundating adjacent ground. Under such flood conditions the ground so flooded does not become and is not a part of the bed of the stream. During flood season the stream is not in its natural state and is not flowing within the natural confines of its banks.

Since that portion of the land in question occupied by the buildings, occasionally flooded, is not within the bed of the stream, said land is the property of the United States and defendants have no right, title, or interest in and to the same.

It appears from Plaintiff's Exhibit No. 18, that the land occupied by the buildings lies south of the line designated, "Top of Bank and High Water Line", running northeasterly from Corner No. 5 of the mining claim. Also from this Exhibit, it appears that the balance of the mining claim is within the normal and natural banks of the river. In other words, if the defendants have any right to any portion of the land in question, it can only be to that portion in the bed of the river lying north of the line above referred to, designated on said Exhibit.

No doubt an accurate metes and bounds survey may be ascertained from said Exhibit. If this cannot be done another survey on the ground will have to be made.

In accordance with the above and foregoing, the plaintiff is entitled to judgment as to all the land here in question except that portion found to be within the bed of the Moyie River.

Counsel for plaintiff shall prepare appropriate findings of fact, conclusions of law, and a proposed judgment, serving copies of the same on counsel for the defendants and submitting the originals to the Court for approval.