**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clifford SEVERSON and Mabel Severson,
Defendants-Appellants,
and
Vernon County, Wisconsin, a public corporation, Defendant.**

**No. 18476.**

United States Court of Appeals,
Seventh Circuit.

July 23, 1971.

Rehearing Denied Sept. 13, 1971.

**632**

Quincy H. Hale, William P. Skemp, La Crosse, Wis., for defendants-appellants.

Daniel S. Boos, Asst. U. S. Atty., John O. Olson, U. S. Atty., John E. Clarke, James R. Mack, Asst. U. S. Attys., Madison, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and GRANT, Chief District Judge.[1]

FAIRCHILD, Circuit Judge.

This action was brought by the United States to quiet title in itself to portions of an island and of a former island in the Mississippi River. The defendants Severson claim under their title to government lots which, when surveyed and platted, formed the river bank. Defendant Vernon county has levied taxes. The United States prevailed in the district court, 309 F.Supp. 915, and the Seversons have appealed.

The parties waived a jury and the case was tried to the court on a stipulation of facts and documentary evidence. The district court made findings, in part, as follows:

"In 1862 and 1874 the United States patented and sold to certain individuals the then shorelands along the east bank of the Mississippi River, described as Government Lots 1 and 2. [Sec. 5–T.12–R.7.] At that time there lay immediately to the west of Lots 1 and 2 a river island (previously observed by surveyors) separated from Lots 1 and 2 by a slough. The westerly boundary of said island was defined by another slough known as Thief Slough; immediately west of Thief Slough lay the island now called Island 126. Both of these islands lay east of the thread of the river. Since 1848 the thread of the river has marked the western boundary of the State of Wisconsin.

"With the passage of time the slough between Lots 1 and 2 and the river island disappeared because of a gradual filling of the channel with silt. The lands lying east of Thief Slough and west of Lots 1 and 2 ceased to be an island and replaced Lots 1 and 2 as the eastern shore of the Mississippi River. In 1935 these new shorelands, the former island, were surveyed. * * * The plat of

---

1. Honorable Robert A. Grant, Chief Judge, Northern District of Indiana, is sitting by designation.

the survey was approved on March 11, 1937. In 1943 the northern portion of the former island * * * was patented by the United States to one Morris, who had previously established a homestead there. The southern portion of the former island * * * was granted to the State of Wisconsin under the Swamp Land Act of September 28, 1950, 9 Stat. 519. The remaining lands on the former island [land in section 5, immediately west of Lots 1 and 2, and in dispute, plus a portion of section 8, not here involved] were never sold or patented by the United States. These remaining lands, as well as Island 126, which is also unpatented [and in dispute], are administered by the United States as part of the Upper Mississippi Wildlife and Fish Refuge.

 \*    \*    \*    \*    \*    \*

"The lands here in dispute can be described as follows: All land lying west of the medial line surveyed in 1935 and shown on the survey plat * * * (The 'medial line' is a line drawn down the center of the main channel of the former slough which separated Lots 1 and 2 of Section 5 from the former island). * * * All such land lying west of said Lots 1 and 2 was in existence at the time the State of Wisconsin was admitted to the Union, May 29, 1848, except the portion thereof filled in by the action of the river. Such land is substantial and lies above normal high water lines except in times of flood when it may be completely or partially covered by water for several weeks."

Sustaining the title of the United States rests upon two propositions. One is that since the land in dispute was in existence as two islands in a navigable river when Wisconsin became a state,

"ownership did not pass to the state, or come within the disposing influence of its laws" (as did ownership of the river bed), but "remained the property of the United States and subject to disposal under its laws." The other proposition is that the 1862 and 1874 patents, conveying lots 1 and 2 according to the plat, did not convey the then existing, but unsurveyed, islands. Both propositions necessarily follow from the 1913 decision of the Supreme Court of the United States in Scott v. Lattig [2] from which the foregoing quotations are taken.

The Seversons point out that in Scott, the Court described that island as "fast dry land." The Court distinguished earlier decisions by noting that in one case, "the evidence left it uncertain whether the so-called island was more than 'a low sand bar, covered a good part of the year with water' "; [3] that in another it was said: "The islands are little more than rocks rising very slightly above the level of the water, and contain respectively a small fraction of an acre and a little more than an acre * * *"; [4] and that another "related to a small island, in a non-navigable river, which the Land Department of the United States had expressly refused to survey * * *." [5]

The Seversons argue that the land in dispute was not and is not "fast dry land" because in normal high water at least 50% is under water and in the abnormally high water of 1965 and 1969, it was virtually all under water. On the other hand, the record shows the following: A river island separated from lots 1 and 2 was drawn in outline upon the plat of the 1845 survey. Both islands are shown on an 1866 map called the Warren Survey Plat. A chart of a survey under the direction of the Mississippi River Commission, dated 1894, shows Island 126 as an island and shows the

2.  227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490.

3.  Grand Rapids & I. R. Co. v. Butler (1895), 159 U.S. 87, 15 S.Ct. 991, 40 L.Ed. 85.

4.  United States v. Chandler-Dunbar Water Power Co. (1908), 209 U.S. 447, 28 S.Ct. 579, 52 L.Ed. 88.

5.  Whitaker v. McBride (1905), 197 U.S. 510, 25 S.Ct. 530, 49 L.Ed. 857.

former island as part of the mainland. The county plat book for 1896 shows the same. The portion of Island 126 in dispute contains 20 acres and the portion of the former island in section 5, 254.81 acres. As surveyed, platted, and patented, lot 1 consists of 38.4 acres and lot 2 of 33.6.

Notes of the 1935 survey of the former island indicate the surveyor found an elm stump 30 inches in diameter, cut about ten years before and showing 100 annual rings. The surveyor was told by Mr. Morris who lived on the portion of the former island in section 32 of township 13, to the north, that he had lived there since 1895, raised crops and had grubbed out numerous oak stumps which were from 20–30 inches in diameter. The surveyor noted that land in section 9, to the south, was considerably lower and swamp, but that the remainder of the former island was upland in character and producing crops without artificial drainage or the construction of levees.

■ We think the finding that the islands were in existence (within the meaning of Scott v. Lattig) at the time of statehood and at the dates of the patents was not clearly erroneous.

Since the finding is correct, and hence ownership remained in the United States when Wisconsin became a state, the Seversons could prevail only if the patents to which they trace their title were construed as conveying the portions of the islands between lots 1 and 2 and the thread of the river, as well as lots 1 and 2 as described in the plat. The Seversons rely on two Wisconsin decisions which do indeed, support their claim. Franzini v. Layland (1903), 120 Wis. 72, 97 N.W. 499, dealt with title to an island in the Mississippi three miles north of the land involved here. The facts are

sufficiently similar. The Supreme Court of Wisconsin held, construing the patent "that a riparian proprietor on a river, nothing appearing clearly to the contrary, owns, as incident to the shore, all islands opposite the same so far as his riparian rights extend. Chandos v. Mack, 77 Wis. 573, 46 N.W. 803. The conveyance to the riparian proprietor of the title to the island in such a case is deemed to have been included in the conveyance of the main land. As regards the original proprietor, the general government, the omission to take notice of the existence of an island in making the public land surveys, and approval of the survey by sovereign authority, evidences that the omitted land was intended to pass as an incident of the land it lies opposite of, and is appurtenant to it if to any." p. 83, 97 N.W. p. 503.

In a similar situation, *Chandos*, decided in 1890, had held, construing a patent to platted government lots on the river bank, that where there was nothing to show that the government intended to reserve an unsurveyed island between the lots described and the middle of the river, "the presumption is that the government did include [the island] and pass all title to it to the purchaser." 77 Wis. p. 576, 46 N.W. p. 804.

"The construction of grants by the United States is a federal not a state question * * * and involves the consideration of state questions only in so far as it may be determined as a matter of federal law that the United States has impliedly adopted and assented to a state rule of construction as applicable to its conveyances." [6]

In Scott v. Lattig, *supra*, the Supreme Court decided that the patent which conveyed surveyed government lots on the bank of a navigable river, according to the plat, did not convey an unsurveyed island between the lots and the thread of

6. United States v. Oregon (1935), 295 U.S. 1, 28, 55 S.Ct. 610, 621, 79 L.Ed. 1267.

See Gibson v. Chouteau (1872), 13 Wall. 92, 80 U.S. 92, 20 L.Ed. 534.

the stream. There was no suggestion that the construction was dependent upon or would yield to state (in that case, Idaho) doctrine. The report shows, moreover, that an argument had been made, citing Idaho cases, that "Unsurveyed islands between the bank and the thread of the main channel of the river not omitted from survey by fraud or mistake pass with the mainland to the riparian patentee." The argument was rejected.

■ Applying the explanations in Scott v. Lattig to our present case, the unsurveyed islands, existing at the time of statehood, remained the property of the United States, and although at the time of the patents, Wisconsin law operated to pass title to the river bed to the patentees, Wisconsin law could not and the patents did not convey to the patentees the unsurveyed islands.

The Seversons also challenge reliance on Scott v. Lattig, *supra,* on the ground that it dealt with an island in Idaho, not within the Northwest Territory and therefore not as a matter of compact subject to the Ordinance of 1787.[7] The argument is that since the Ordinance of 1787 guaranteed, as a matter of compact, "judicial proceedings according to the course of the common law," the common law principles said to be reflected in *Franzini* and *Chandos* are binding on the United States in Wisconsin, which was part of the Northwest Territory.

■ The argument has historical interest, but no authority has been cited or found showing that the construction of grants of the United States is any less a federal question in states carved out of the Northwest Territory than elsewhere, and we are not so persuaded.

The judgment is affirmed.

7. It is interesting to note that Sec. 14 of An Act to establish the Territorial Government of Oregon, enacted August 14, 1848 (30th Congress), extended the Ordinance of 1787 over the Territory of Oregon, out of which Idaho eventually was formed.