**Barbara W. WOLFF and Janice Wheeler Tinker, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

No. 91–2252.

United States Court of Appeals, Sixth Circuit.

Aug. 28, 1992.

BEFORE: NELSON and SILER, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

### ORDER

The United States having filed a petition for rehearing with a suggestion for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of the court, and no judge having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original hearing panel.

The panel notes that the original decision, 967 F.2d 222, is claimed to have been erroneous insofar as it held that absent evidence of a contrary intent by the grantor, federal law looks to state riparian rights law in determining whether small unsurveyed islands lacking apparent value are included in conveyances of littoral land by the United States. In this connection the United States cites, as it did earlier, *Moss v. Ramey*, 239 U.S. 538, 36 S.Ct. 183, 60 L.Ed. 425 (1916), *Scott v. Lattig*, 227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490 (1913), and *Mission Rock Co. v. United States*, 109 F. 763, 770 (9th Cir.1901), *aff'd*, 189 U.S. 391, 23 S.Ct. 606, 47 L.Ed. 865 (1903). The United States also cites, for the first time, three circuit court opinions: *Ritter v. Morton*, 513 F.2d 942 (9th Cir.), *cert. denied sub nom. Ritter v. Kleppe*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975), *United States v. Boyd*, 458 F.2d 1252 (6th Cir.1972), and *United States v. Severson*, 447 F.2d 631 (7th Cir.1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 716, 30 L.Ed.2d 731 (1972). Neither the previously cited decisions nor the newly cited ones persuade us that we acted under any misapprehension of law.

### I

Federal law distinguishes between navigable and non-navigable waterways. At oral argument we asked counsel for the plaintiffs whether Lake Arbutus is navigable, and, if it is navigable, whether title to the island did not pass to Michigan when the Territory became a State. (If it did, there could be no question that Michigan law would govern the riparian rights issue.) Counsel declined to take this tack, so we did not address it in our initial opinion. The argument presented in the petition for rehearing prompts us to address the consequences of navigability now.

Ever since *Pollard's Lessee v. Hagan*, 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845), it has been the law of the United States that upon admission to the Union, a new state acquires title to the lands underlying navigable waters within its boundaries. Under the equal footing doctrine,[1] as the Supreme Court has consistently applied it, small unsurveyed islands of no apparent value to the United States also pass to the state upon admission, just as

1. The equal footing doctrine says that new states enter the union with the same rights, sovereignty, and jurisdiction within their borders as did the original thirteen states. When the original states came together to form the United States, each of them retained ownership of the submerged land underlying navigable waterways within its borders. Accordingly, new states such as Michigan likewise have title to the lands under their navigable waters. *State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 370, 97 S.Ct. 582, 587, 50 L.Ed.2d 550 (1977).

submerged lands do. *United States v. Chandler–Dunbar Water Power Co.,* 209 U.S. 447, 451–52, 28 S.Ct. 579, 580–81, 52 L.Ed. 881 (1908), *affirming* 152 F. 25 (6th Cir.1907) (two islands containing a little more than acre and a fraction of an acre); *Grand Rapids & Indiana R.R. Co. v. Butler,* 159 U.S. 87, 15 S.Ct. 991, 40 L.Ed. 85 (1895) (2.56 acre island); see also *Whitaker v. McBride,* 197 U.S. 510, 25 S.Ct. 530, 49 L.Ed. 857 (1905).

The cases cited in the petition for rehearing are not to the contrary. The islands at issue in *Moss v. Ramey,* 239 U.S. 538, 36 S.Ct. 183, 60 L.Ed. 425 (1916), and *Scott v. Lattig,* 227 U.S. 229, 33 S.Ct. 242, 57 L.Ed. 490 (1913), were much larger than those in *Grand Rapids* and *Chandler–Dunbar,* they consisted of over 138 acres of land in one case and 120 acres in the other. See also *United States v. Severson,* 447 F.2d 631, 633–34 (7th Cir.1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 716, 30 L.Ed.2d 731 (1972) (relying on *Scott* and holding that large islands do not pass to the state under the equal footing doctrine). Unlike the islands involved in *Chandler–Dunbar, Grand Rapids,* and the instant case, moreover, the islands with which the Supreme Court was concerned in *Moss* and *Scott* had been left unsurveyed by mistake, and not because they lacked value to the government at the time of the survey. See generally *Moss,* 239 U.S. at 546, 36 S.Ct. at 184 (distinguishing *Whitaker v. McBride,* 197 U.S. 510, 25 S.Ct. 530, on the ground that the island at issue in *Whitaker* contained only 22 acres and the government had repeatedly refused to treat it as government land).

*Mission Rock Co. v. United States,* 109 F. 763, 770 (9th Cir.1901), *aff'd,* 189 U.S. 391, 23 S.Ct. 606, 47 L.Ed. 865 (1903), involved two small island in San Francisco Bay. California entered the Union in September of 1850, but the United States did not conduct a public survey of the exterior limits of the City of San Francisco until 1864. 109 F. at 765. The United States thus did not fail to survey the islands when it surveyed the adjacent land, the adjacent land never having been surveyed at all. In that situation, the courts could not find that the United States refused to treat the islands as public land. Neither could the courts assume that the islands lacked value to the United States—and, in point of fact, the islands had a clear value for military purposes.

▮ Applying the doctrine of all these cases to the situation presented in the case at bar, it is clear that if Arbutus Lake is navigable, the island at issue here passed to the State of Michigan when Michigan entered the Union in 1836. The United States had no further claim to the island, and when the littoral land was patented to Michigan, the island became attached to the littoral land under Michigan law. See *Hardin v. Shedd,* 190 U.S. 508, 519, 23 S.Ct. 685, 685, 47 L.Ed. 1156 (1903); *Grand Rapids,* 159 U.S. 87, 15 S.Ct. 991. If the lake is navigable, therefore, the subsequent conveyance of the littoral land unquestionably carried the island with it.

## II

Either Artubus Lake is navigable or it is not. If it is, our inquiry is at an end. If it is not, we think that federal law still points to the conclusion that the plaintiffs must prevail in this case.

▮ As stated in our initial opinion, federal law provides that absent explicit or implicit evidence of contrary intent, the United States "will be taken to have assented that its conveyance should be construed and given effect ... according to the law of the State in which it lies." *Oklahoma v. Texas,* 258 U.S. 574, 594–95, 42 S.Ct. 406, 414, 66 L.Ed. 771 (1922); see also *Hardin v. Shedd,* 190 U.S. 508, 519, 23 S.Ct. 685, 685, 47 L.Ed. 1156 (1903) (in cases not governed by the equal footing doctrine, "the United States assumes the position of a private owner subject to the general law of the State, so far as its conveyances are concerned").[2] Under the

2. We note that this rule would also apply where a navigable waterway has an island that did not pass under the equal footing doctrine. See, *e.g.,*

Michigan law of riparian rights, as we explained in our original opinion, the Arbutus Lake island would pass to the purchaser of the littoral land.

The United States now cites three circuit court cases in support of the proposition that the island did not so pass. Each of these cases is readily distinguishable.

In *United States v. Severson*, 447 F.2d 631 (7th Cir.1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 716, 30 L.Ed.2d 731 (1972), private parties who had obtained littoral land originally granted by the United States claimed that their riparian rights extended to two islands in a navigable waterway. It is not clear how large the islands were *in toto*, but the littoral landowners were claiming fractional pieces of the islands consisting of 254.81 acres and 20 acres.

The littoral lots, in contrast, contained only 38.4 acres and 33.6 acres. The Court of Appeals for the Seventh Circuit, relying on the "explanations in *Scott*," *id.* at 635, found that the United States had retained title to the islands when it sold the littoral land to the original grantees. The Supreme Court had held that the *Scott* islands were large enough relative to the patented littoral lots to create an inference that the United States did not intend to divest itself of the islands when it conveyed the littoral land. *Scott*, 227 U.S. at 241–42, 33 S.Ct. at 243. The Seventh Circuit employed similar logic in *Severson*.

■ In *Ritter v. Morton*, 513 F.2d 942 (9th Cir.), *cert. denied sub nom. Ritter v. Kleppe*, 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975), the court dealt with conflicting claims to three islands containing 8.99, 1.29, and .84 acres. *Id.* at 944.

Properly looking to the intent of the United States as grantor of the littoral land, the court found that the United States intended to keep the islands. *Id.* at 948, 950. As was not true in the case at bar, the *Ritter* islands had been left unsurveyed due to a surveyor's error. *Id.* at 948. An intent to survey islands implies an intent to treat them as separate blocks of land not automatically passing with the littoral land.

In *United States v. Boyd*, 458 F.2d 1252 (6th Cir.1972), the Boyds claimed ownership of a thirty acre island located in a bay. At the time the littoral land was surveyed and patented by the United States, the island was of little or no apparent value and it consisted of only .003 acres; it subsequently grew ten thousand-fold by accretion. The island had not been surveyed, and the Boyds argued that the United States conveyed the island with a certain parcel of littoral land.

The problem the Boyds faced was that the parcel of littoral land that had been conveyed by the government was not the parcel to which, under Michigan law, the island was attached. *That* parcel had been retained by the government. Despite this very considerable handicap, we allowed the Boyds to try to show that the government affirmatively intended to convey the island to the patentee of the littoral parcel that was conveyed. The Boyds could show no such intent. First, the failure to survey the island was a mistake; it could not be construed as reflecting an intent to give it up. *Id.* at 1254, quoting *Scott*, 227 U.S. at 241–42, 33 S.Ct. at 243. Second, we found that the island would have been of no value to the patentee at the time of the patent, but might have been of some value to the government. 458 F.2d at 1254–55.[3]

*Packer v. Bird*, 137 U.S. 661, 669, 11 S.Ct. 210, 211, 34 L.Ed. 819 (1891).

**3.** We recognize that there is a dictum in *Boyd* that could be construed as suggesting that patentees of littoral land always take only to the shoreline. See *id.* at 1254 ("The patent ... conveyed title only to the edge of the lake.") While it is true "that proprietors of lands bordering on navigable rivers, under titles derived from the United States, hold only to the stream," *St. Paul & P.R.R. Co. v. Schurmeir*, 74 U.S. (7 Wall.) 272, 287 (1868), it is also true that "whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states." *State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 380, 97 S.Ct. 582, 591, 50 L.Ed.2d 550 (1977), quoting *Packer v. Bird*, 137 U.S. 661, 669, 11 S.Ct. 210, 211, 34 L.Ed. 819 (1891). Thus the *St. Paul* language, cited by the *Boyd* panel, must be read in light of the familiar rule that there is no federal common law extending riparian rights to a United States patentee; instead, courts must

The panel concludes that the other issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is DENIED.

look to state law. *See generally State Land Bd.,* 429 U.S. at 378–81, 97 S.Ct. at 590–91.