## IN THE

# SUPREME COURT

## OF THE

## STATE OF IDAHO.

(May 17, 1913.)

## A. B. MOSS & BRO., Respondents, v. A. H. RAMEY, Appellant.

[136 Pac. 608.]

RIPARIAN OWNERSHIP—TITLE TO ISLANDS—LAW OF THE CASE.

1. Under the holding of the supreme court of the United States, an island in Snake river of dry land which is surrounded by well-defined channels of the stream and which island existed at the time the state was admitted into the Union, and which was not included in the public land survey and comprised an area larger than a legal subdivision authorized under the United States land surveys, did not pass from the government to the state on the admission of the state, and did not pass to the upland or riparian proprietor by a patent to the abutting lots or subdivisions meandering the channel of the stream.

2. The general rule of *res adjudicata* or law of the case as recognized and announced by this court in *Hall v. Blackman*, 9 Ida. 555, 75 Pac. 608, does not apply in a case where a federal question is involved that may be reviewed on writ of error to the supreme court of the United States, and where subsequent to the decision by the state court the United States supreme court has held to a different rule and reversed the ruling of the state court prior to the hearing on a second appeal in another case involving the same question of law.

3. The rule of law heretofore adopted by the supreme court of this state is reaffirmed to the effect that a riparian owner on a meandered stream or body of water, whether navigable or non-navigable, takes title to the center or thread of the stream.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

Suit to quiet title. Judgment for plaintiffs. Defendant appealed. *Reversed.*

R. B. Scatterday and Karl Paine, for Appellant.

Whether Snake river is navigable or non-navigable, plaintiffs cannot prevail, for in any event the west line of the respondent's premises does not, under the United States patents thereto, extend west of the east channel of Snake river. (*Horne v. Smith,* 159 U. S. 40, 15 Sup. Ct. 988, 40 L. ed. 68; *Bates v. Illinois Central R. R. Co.,* 1 Black, 204, 17 L. ed. 158; *Whitney v. Detroit Lumber Co.,* 78 Wis. 240, 47 N. W. 425; *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Niles v. Cedar Point Club,* 175 U. S. 300, 20 Sup. Ct. 124, 44 L. ed. 174; *Glenn v. Jeffrey,* 75 Iowa, 20, 39 N. W. 160; *Bissell v. Fletcher,* 19 Neb. 725, 28 N. W. 303; *Fulton v. Frandolig,* 63 Tex. 330; *Lammers v. Nissen,* 4 Neb. 245.)

Plaintiffs must recover, if at all, upon the strength of their own title, not upon the weakness of the defendant's. (10 Am. & Eng. Ency. Law, 2d ed., 481; *Fussell v. Hughes,* 113 U. S. 566, 5 Sup. Ct. 639, 28 L. ed. 998; *Glenn v. Jeffrey,* 75 Iowa, 20, 39 N. W. 160; *Northern Pac. R. Co. v. McCormick,* 94 Fed. 937, 36 C. C. A. 560; *Silver Creek Cement Corp. v. Union Lime etc. Co.,* 138 Ind. 297, 35 N. E. 125, 37 N. E. 721; *Huntington v. Jewett,* 25 Iowa, 249, 95 Am. Dec. 788; *Parker v. Cassingham,* 130 Mo. 348, 32 S. W. 487; *Burnham v. Hitt,* 143 Mo. 414, 45 S. W. 368; *Sanger v. Merritt,* 120 N. Y. 109, 24 N. E. 386; *Wolfe v. Dowell,* 13 Smedes & M. (Miss.) 103, 51 Am. Dec. 147; *Slauson v. Goodrich Transp. Co.,* 99 Wis. 20, 74 N. W. 574, 40 L. R. A. 825; *Oregon Ry. N. Co. v. Hertzberg,* 26 Or. 216, 37 Pac. 1019; *Mather v. Walsh,* 107 Mo. 121, 17 S. W. 755.)

Before Ramey is required to defend his claim to the island, Moss & Brother must establish their right thereto, and in so doing they must necessarily present an issue which involves a federal question. (*Nashville, C. & St. L. R. Co. v. Taylor,* 86 Fed. 175; Simkins, Federal Suit in Equity, 2d ed., p. 134.)

Richards & Haga and McKeen F. Morrow, for Respondents.

The findings of the trial court that the patents from the government conveyed to the patentees the legal title to the land in dispute will not be reviewed upon this appeal, for such findings are in exact accordance with the decision of this court on the former appeal in this case (14 Ida. 598, 95 Pac. 513). (*Kimpton v. Jubilee Min. Co.,* 22 Mont. 108, 55 Pac. 918.)

Where a question necessary for the determination of a case has been presented to and decided by an appellate court, such decision becomes the law of the case in all subsequent proceedings in the same action, and is a final adjudication, from the consequences of which the court cannot depart nor the parties relieve themselves. (26 Am. & Eng. Ency. Law, 184; 3 Cyc. 395–397; 2 Spelling, New Trial and App. Prac., sec. 691; 2 Hayne, New Trial and App., pp. 1657–1662; *Westerfeld v. New York Life Ins. Co.,* 157 Cal. 339, 107 Pac. 699; *Hall v. Blackman,* 9 Ida. 555, 75 Pac. 608.)

The state supreme court is only authorized to review the judgment of the trial court for errors committed there, and the United States supreme court can do no more, and, if the right was not set up or claimed in the proper court below, the judgment of the highest court of the state in the action is conclusive so far as the right of review by the United States supreme court is concerned. (*Ex parte Spies,* 123 U. S. 131, 8 Sup. Ct. 21, 31 L. ed. 80; *Chappell v. Bradshaw,* 128 U. S. 132, 9 Sup. Ct. 40, 32 L. ed. 369; *Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Slade,* 216 U. S. 78, 20 Sup. Ct. 230, 54 L. ed. 390; *Baldwin v. Kansas,* 129 U. S. 52, 9 Sup. Ct. 193, 32 L. ed. 640; *Jacobi v. Alabama,* 187 U. S. 133, 23 Sup. Ct. 48, 47 L. ed. 106; *Erie R. R. v. Purdy,* 185 U. S. 148, 22 Sup. Ct. 605, 46 L. ed. 847; *Layton v. Missouri,* 187 U. S. 356, 23 Sup. Ct. 137, 47 L. ed. 214.)

No federal question was presented to the trial court on the second trial in this case, because appellant admitted by his amended answer that title passed to the predecessors of respondents under their patents. (2 Ency. L. & P. 173;

*Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217, 101 Pac. 81; *Aikens v. Frank,* 21 Mont. 192, 53 Pac. 538.)

This court will not pass upon and determine questions which the record does not show were passed upon and determined by the trial court. (*Marysville M. Co. v. Home Fire Ins. Co.,* 21 Ida. 377, 121 Pac. 1026.)

AILSHIE, C. J.—This case is here on appeal for the second time. (See *A. B. Moss & Bro. v. A. H. Ramey,* 14 Ida. 598, 95 Pac. 513.) On the former appeal the judgment was reversed and the cause was remanded, for the purpose of having the trial court pass upon the question of adverse possession as presented by the pleadings. The trial court heard the case and found against the defendant and in favor of the plaintiffs, and the defendant has prosecuted this appeal.

On the former appeal this court held that the lands in dispute between the meander line and the thread of the stream in the main channel of Snake river passed by patent from the United States, issued for the lots and legal subdivisions abutting upon the meander lines, and that the holder of the title to the upland took title to all the land between the meander line and the center or the main channel of the stream. The trial court had found upon the first trial that the land in dispute comprised "a large island and islands," aggregating about 120 acres, and that between this island and the upland owned by the plaintiffs there is a "large channel of Snake river with well-defined banks and channel varying in width from 100 to 300 feet and in depth from six to ten feet through which the water of Snake river regularly flows during a large portion of the year, varying from three to six months, and some years the entire season." This court held that, notwithstanding the fact that there was a high-water channel between the main body of upland and this tract of land, that still this was a part of the mainland, and that it passed by patent to the upland owner of the abutting lots and subdivisions, and that the title thereto had passed from the government to the upland patentees and that the

so-called island was no longer a part of the public domain. When the case went back for retrial, the pleadings were so amended as to reduce the issue merely to one of adverse possession, and the trial court found that issue against the defendant and in favor of the plaintiffs.

Since the last trial of this case the supreme court of the United States in *Scott v. Lattig,* 227 U. S. 229, 33 Sup. Ct. 242, 57 L. ed. 490, has held that an island in Snake river, which was not included in the public land survey and which existed at the time Idaho was admitted into the Union, neither passed to the state by the admission of the state nor passed by patent to the uplands abutting on the nearest channel of the stream, and that an island which ''was fast dry land'' at the time of the admission of the state into the Union and at the time of the issuance of patent to the abutting upland does not pass by patent to the upland patentee. That holding is in conflict with the holding of this court in *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47, and is in some measure contrary to the views entertained and expressed by the court in *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, on the authority of which the case of *Moss & Bro. v. Ramey* was decided. To that extent this court must and does modify its holdings as announced in the above cases.

The question is at once presented as to whether the rule of *res adjudicata* or law of the case as heretofore recognized by this court in *Hall v. Blackman,* 9 Ida. 555, 75 Pac. 608, and *Hunter v. Porter,* 10 Ida. 86, 77 Pac. 434, should be, or can properly be, invoked in the case before us. We are of the opinion that the doctrine of law of the case cannot properly be invoked in a case like this. Where this court is not the court of final resort in the determination of the question presented and a writ of error may be taken to the supreme court of the United States and such a writ is prosecuted and that court expresses a different view as to the law applicable to a given state of facts from that entertained by this court, it is our duty on a subsequent appeal in another case involving the same federal question to reconsider the question pre-

-viously determined and render our judgment in conformity with what we understand to be the rule announced by the court of last resort on such question. This principle seems to be recognized by the authorities. (See *United States v. Denver & R. G. R. R. Co.,* 191 U. S. 84, 24 Sup. Ct. 33, 48 L. ed. 106; *Zeckendorf v. Steinfeld,* 225 U. S. 445, 32 Sup. Ct. 728, 56 L. ed. 1156; *Messinger v. Anderson,* 225 U. S. 436, 32 Sup. Ct. 739, 56 L. ed. 1152; *Bostwick v. Brinkerhoff,* 106 U. S. 3, 1 Sup. Ct. 15, 27 L. ed. 73; 3 Cyc. 395; 2 Spelling, New Trial and Appellate Practice, sec. 691.)

Notwithstanding our previous decision in this case, we are of the opinion that the question as to whether or not this tract of land is an island or detached public domain, or, as stated by the supreme court in *Scott v. Lattig, supra,* is "fast dry land," should be determined upon all the evidence the parties desire to submit and in the light of the decision of the supreme court in *Scott v. Lattig,* 227 U. S. 229, 33 Sup. Ct. 242, 57 L. ed. 490.

For the foregoing reasons, we have concluded to reverse the judgment in this case and remand the cause to the trial court for a new trial on all the issues presented in the original complaint or that the parties may see fit to present by amended pleadings.

In remanding this case, we think it proper to suggest to the parties and to the trial court that it is not the purpose of this court to in any way recede from the rule heretofore announced to the effect that a riparian owner in this state on a meandered stream or body of water, whether navigable or non-navigable, takes title to the center or thread of the stream. (*Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240; *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47; *Ulbright v. Baslington,* 20 Ida. 539, 119 Pac. 292, 294.) On the other hand, it is the equally well-fixed purpose of the court to follow the views expressed by the supreme court of the United States in *Scott v. Lattig,* in reference to such islands or tracts of land as may fall within the purview of that decision wherein

it may appear that title has not passed from the government to any patentee.

Judgment reversed and cause remanded for a new trial. Costs awarded in favor of appellant.

Stewart, J., concurs.

SULLIVAN, J., Concurring in Part.—I concur in the conclusion reached to the effect that the general rule of *res adjudicata* or law of the case does not apply in this case. I also concur in the conclusion to reverse the judgment and remand the cause for a new trial on all of the issues presented in the original complaint, or that the parties may see fit to present by any amendment to the pleadings; but dissent as to the rule heretofore announced by this court to the effect that a riparian owner in this state takes title to the thread of the stream. My views upon that question are expressed in my dissenting opinions in the cases of *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47. It has been held by the supreme court of the United States in *Scott v. Lattig,* 227 U. S. 229, 33 Sup. Ct. 242, 57 L. ed. 490, and other cases, that upon the admission of a state into the Union, the ownership of the bed of navigable streams passed to the state, and if the thread of such navigable stream was the boundary of the state, the ownership passed to the state to the thread of the stream, subject to certain limitations mentioned in said decision. In the case of *Scott v. Lattig, supra,* referring to this matter, the court said: "That the subsequent disposal by the former [the United States] of the fractional subdivisions on the east bank, carried with it no right to the bed of the river, save as the law of Idaho may have attached such a right to private riparian ownership."

It is there held that the disposal by the United States of the fractional subdivisions on the east bank of said river carried with it no right to the bed of the river.

We have no statute law whatever granting a private riparian owner the bed of the stream. In my view of the mat-

ter, the supreme court of this state has not the right or authority to donate any land that belongs to the state to a riparian owner, or to anyone else. Under the rule laid down in all of the decisions of the United States supreme court on this question, the bed of Snake river, at least to the border line of the state, passed to the state and not to the riparian owner, and this court has no authority to donate the title thereof to any person.

## ON REHEARING.

### (November 26, 1913.)

SULLIVAN, J.—A rehearing was granted in this case and a reargument was had at this term of our court. In our former opinion (see *ante*, p. 6), the court stated as follows:

"For the foregoing reasons, we have concluded to reverse the judgment in this case and remand the cause to the trial court for a new trial on all of the issues presented in the original complaint or that the parties may see fit to present by amended pleadings."

That decision was rendered in view of the decision of the supreme court of the United States in *Scott v. Lattig,* 227 U. S. 229, 33 Sup. Ct. 242, 57 L. ed. 490. This court had held that the riparian owner was the owner of an unsurveyed island in Snake river. The supreme court of the United States held that an island being in existence in Snake river when Idaho became a state did not pass to the state upon admission to statehood but remained the property of the United States subject to disposal by it.

On a former appeal of the case at bar (see *Moss v. Ramey,* 14 Ida. 599, 95 Pac. 513), this court reversed the trial court and held that the riparian owners were the owners of the land in question, because of being the riparian owners of the land bordering on said stream opposite thereto, and a new trial was granted in order that the trial court might determine

whether the plaintiffs' title had been divested by reason of the adverse possession of the defendant. The judgment was reversed and a new trial ordered, with leave to both parties to amend their pleadings. The defendant amended his pleadings to conform to the order of the court, setting up title by adverse possession. The cause was tried by the court and the court made findings of fact and conclusions of law in favor of plaintiffs, based on the ground that they were the owners of the land in dispute by reason of being the riparian owners of land bordering on Snake river opposite thereto, and that their title had not been divested by reason of the adverse possession of said island by the defendant. The trial court found that by reason of the plaintiffs being owner of the lots of land bordering on Snake river, their title extended westerly to the thread of the channel of said river and that the land in controversy was between the thread of the stream and said lots bordering thereon. There is here presented a federal question and the supreme court of the United States held in a similar case (*Scott v. Lattig,* 227 U. S. 229, 33 Sup. Ct. 242, 57 L. ed. 490) that the riparian owner did not acquire title to this island by reason of being a riparian owner of land opposite thereto. The plaintiffs base their title to said island upon the fact that they are riparian owners opposite said island, and if this case is remanded to the trial court for a new trial, that court, under the decision of the Scott-Lattig case, must hold against the plaintiffs in this action. Their right to have the title quieted in them depends upon whether the island passed with the mainland under or by virtue of the United States patent issued to their predecessors in interest. That is clearly a federal question and is decided decisively against them under the rule laid down in the Scott-Lattig case. The plaintiffs brought this action to quiet their title, and their right to recover depends upon the strength of their own title and not upon the weakness of the defendant's title. Before the defendant is required to defend his claim to the island, the plaintiffs must establish their right thereto, and in so doing must establish their title on

the ground that their predecessor in interest acquired title to said land by reason of the patent issued to him by the government for the lots bordering on Snake river opposite said island. Under the decision of the Scott-Lattig case, the plaintiffs cannot establish their title to said land. That being true, they could not have their title quieted in this action, for the reason that under the facts and the law they have no title, and the writer of this opinion has no doubt but that under the pleadings and decision in this case a federal question is involved and that the final decision of this court may be reviewed by the supreme court of the United States upon a writ of error from that court. It would, therefore, be a useless act to remand the case for a new trial, as directed by this court in the opinion on the original hearing of this case.

We are not unmindful of the contention made by respondents that the decision of this court on the previous appeal is the law of the case and that we are bound to adhere to the conclusion reached at that time. That rule prevails in this state, as was stated in the previous opinion, but the facts of this case are peculiar, and we believe it our duty to dispose of each case on its own facts and circumstances so as to meet the requirements of the law as nearly as possible. If this land in controversy is still a part of the public domain, as is undoubtedly the case under the decision of the supreme court of the United States in the Scott-Lattig case, it is clearly our duty to take notice of that fact as it appears in the case and decide accordingly, even though we have previously decided to the contrary. This case turns solely on a federal question, and we are bound to follow the decisions of the federal supreme court as we understand them. This latter case runs counter to what this court had understood the previous decisions of that court to hold, and it is our intention to follow it as far as we think it goes. For these reasons we do not think that the rule of *res adjudicata,* or law of the case, applies in this case as it would apply if no federal questions were involved.

The cause is therefore remanded to the trial court, with directions to enter a judgment dismissing the action. Costs are awarded to appellant.

Ailshie, C. J., and Stewart, J., concur.

(May 28, 1913.)

## WILLIAM McCORMICK, Appellant, v. F. R. BROWNELL, Administrator, Respondent.

[136 Pac. 613.]

ESTATE OF DECEASED PERSON—RIGHT OF ADMINISTRATION—RIGHT OF PERSON ENTITLED TO APPOINTMENT TO NOMINATE ANOTHER PERSON.

1. Under sec. 5364, Rev. Codes, upon the hearing of an application for the appointment of an administrator of an estate, it is necessary for the applicant to prove the death of the deceased by the testimony of the applicant or others. This requirement, however, is complied with where two separate applications are made and filed for the appointment of two different persons as administrator, and both petitions allege the death of the testator and the evidence supports the allegations.

2. Under the provisions of sec. 5351, Rev. Codes, any person legally competent may apply and be appointed administrator of an estate, if no one of the first ten classes of said section desires or makes application for such appointment.

3. The provisions of secs. 5351 and 5365 do not authorize or empower the probate judge of a county to appoint a person who is not of kin to the deceased as administrator, except, first, that no application is made by one of kin of the deceased, who is a resident of the state and competent and entitled to the appointment; and, second, upon nomination or written request of the person entitled to the appointment.

4. The law of this state clearly grants to the person entitled to administration the power to select some competent person to discharge the duties of administration, and the probate court is limited in his power by such request, and if such person entitled to appointment applies for the appointment of a stranger or a person not of

kin, the appointment depends wholly upon the request of the one who is of kin, if there is such kin, and such person of kin can control the appointment until the probate judge has acted upon the appointment by appointing the person so nominated, provided that such person must be a competent person, under the law.

5. The law recognizes the right of a person of kin to nominate and request the appointment of a competent person as administrator, where the person of kin does not desire to be appointed, and where such application is filed with the probate judge for the appointment of a person to the office, until such petition is acted upon by the probate judge, such request may be withdrawn and the one of kin has the right to make application for the appointment of himself as administrator, and the former nomination and request is of no force or effect.

APPEAL from the District Court of the Fourth Judicial District for Blaine County. Hon. Edward A. Walters, Judge.

Appeal from an order appointing an administrator of the estate of a deceased person. *Reversed.*

**J. G. Hedrick,** for Appellant.

No person is competent to serve as administrator who is not a *bona fide* resident of Idaho. (Sec. 5355, Rev. Codes.)

And a nonresident is incompetent to nominate. (Sec. 5365, Rev. Codes; *In re Muersing's Estate,* 103 Cal. 585, 37 Pac. 520; *In re Donovan's Estate,* 104 Cal. 623, 38 Pac. 456; *State v. Woody,* 20 Mont. 413, 51 Pac. 975.)

Only the nominee of one who is himself competent to serve can be considered by the court. (*In re. Bedell's Estate,* 97 Cal. 339, 32 Pac. 323; *Estate of Beech,* 63 Cal. 458; *Estate of Hyde,* 64 Cal. 228, 30 Pac. 804.)

Right to nominate exists only in the person entitled to administer. (*Estate of Dorris,* 93 Cal. 611, 29 Pac. 244; *Estate of Richardson,* 120 Cal. 344, 52 Pac. 832; *Estate of Healy,* 122 Cal. 162, 54 Pac. 736; *Estate of Brundage,* 141 Cal. 538, 75 Pac. 175.)

A petitioner cannot pray that letters issue to another; his prayer must be that letters issue to himself. (*In re Batchelor,*

64 How. Pr. (N. Y.) 350.   See, also, *Estate of Kirtlan,* 16 Cal. 161.)

A request may be revoked at any time before it has been acted upon.   (*Rowell v. Adams,* 83 S. C. 124, 65 S. E. 207.)

It may be revoked where it was given under a mistake of fact.   (*Slay v. Beck,* 107 Md. 357, 68 Atl. 573; *Lutz v. Mahan,* 80 Md. 233, 20 Atl. 645.)

The mere fact of requesting the appointment of another does not estop a revocation of the same, and the right to revoke is upheld.   (*In re Shiel's Estate,* 120 Cal. 347, 52 Pac. 808; *Triplett v. Wells,* Litt. Sel. Cas. (16 Ky.) 49; *Casey v. Gardiner,* 4 Brad. Surr. Rep. (N. Y.) 13.)

Sullivan & Sullivan, for Respondent.

The court found Brownell had acted upon the renunciation of McCormick, so he is estopped.   (*Rowell v. Adams,* 83 S. C. 124, 65 S. E. 207.)

A renunciation is final and irrevocable unless made under a mistake of fact.   (*Slay v. Beck,* 107 Md. 357, 68 Atl. 573.)

"A voluntary renunciation of the right to administer, once made, cannot afterward be withdrawn."   (*Lutz v. Mahan,* 80 Md. 233, 30 Atl. 645; *Estate of Kirtlan,* 16 Cal. 162; *Estate of Wooten,* 56 Cal. 323; *Estate of Keane,* 56 Cal. 407; *Estate of Moore,* 68 Cal. 283, 9 Pac. 164; *In re Bedell,* 97 Cal. 339, 32 Pac. 323; *In re Bullard's Estate,* 114 Cal. 462, 46 Pac. 297; *In re Sullivan's Estate,* 25 Wash. 430, 65 Pac. 793; *In re Clute's Estate,* 37 Misc. Rep. 710, 76 N. Y. Supp. 456.)

When a revocation is attempted it is the duty of the court to hear the reasons and excuses for the revocation, and also the attendant circumstances, and then determine whether or not he should grant the right to withdraw.   Such is the situation in the case at bar, as the appellant sought to revoke his waiver and gave as a reason that he had been misinformed as to his rights.   He was given a hearing in both the probate and district courts, wherein he sought to prove the excuses relied upon, and further that his consent to sign had been secured by undue influence.   These matters of fact were the issues, tried by the court, and found against the appellant,

and he is, therefore, precluded from obtaining any relief in this court, for the reason that there was a substantial conflict in the evidence. (*Estate of Shiels,* 120 Cal. 348, 52 Pac. 808.)

"As a general rule, a retraction of a renunciation is not favored, and it is generally not permissible after another has been appointed to the office or even while proceedings for such appointment are pending." (18 Cyc. 98; 1 Abbott's Probate Law, 436, 437; 1 Ross' Probate Law & Pr., p. 342; *Stocksdale v. Conaway,* 14 Md. 99, 74 Am. Dec. 515; *Becker v. Orr,* 243 Ill. 77, 90 N. E. 181; *State v. Romjue,* 136 Mo. App. 650, 118 S. W. 1191.)

STEWART, J.—On the 12th day of July, 1912, a petition signed by William McCormick and L. L. Sullivan, attorney in fact, was filed in the probate court of Blaine county, alleging the death of Michael McCormick, on the 11th day of July, 1912, in Hailey, Blaine county, Idaho; that said deceased was a resident of Blaine county, state of Idaho; that the deceased left an estate of real and personal property of about $25,000.

The petition alleges that the next of kin of the deceased, in so far as the petitioners are advised and believe, were William McCormick, a nephew and resident of the state of Idaho, and certain other heirs living outside of the state, mostly in the state of Maryland; that an inquiry had been made to ascertain whether a will had been made or left by the deceased, and none was found, and according to the information and belief of the petitioners the deceased died intestate; that the petitioners are the nephew and attorney in fact for other nephews and nieces. The petition contains a request that letters of administration be issued to F. R. Brownell of Hailey, Idaho.

On July 15, 1912, William McCormick, who signed the petition filed on July 12th, filed with the probate court a petition asking leave to withdraw his name from the petition filed on July 12th, wherein he had requested that F. R. Brownell be appointed as administrator, for the reason that at the time

he signed the petition he was misinformed as to his rights as next of kin in the premises, and signed the same under a misapprehension of the law and facts.

The probate judge, upon the filing of the above petition to withdraw, issued an order setting July 23, 1912, as the day for hearing the petition, which date was postponed until July 24th, and notice of such hearing was duly served.  On July 24th William McCormick filed with the probate judge a revocation in writing of his request filed in the probate court · on July 12th for the issuance of letters of administration to Brownell.  On the same day William McCormick filed a petition with the probate judge setting forth the death of Michael McCormick, the date and place of death and the fact that the deceased owned certain property, and the names of the heirs, etc., stating grounds for the appointment of an administrator, and wherein William McCormick asked and petitioned that he be appointed administrator of the estate of Michael McCormick.  Notice of the filing of this petition was given and a day was set for hearing of said petition, August 5, 1912.  The minutes of the probate court show that a hearing was had upon the application of William McCormick for his appointment as administrator, and the revocation of his request for the appointment of Brownell, and that the probate judge recorded the fact that on July 24, 1912, the court refused to allow McCormick to withdraw his name from the petition for the appointment of Brownell, and thereupon refused and denied the application of McCormick to revoke his request for the appointment of Brownell, and that upon the application of McCormick for his own appointment the court refused to consider the same and denied the application for the reason that it had heretofore decided, on July 24th, that McCormick had waived his right, and the court had refused his request to withdraw his name from the application for the appointment of Brownell.  On August 5th the probate court made an order that letters of administration of the estate of Michael McCormick be issued to F. R. Brownell, and on the 8th of August an order was made appointing Brownell administrator, and Brownell qualified as such.  An

appeal was taken from the judgment of the probate court to the district court.

The case was tried in the district court and the trial court in effect found: (1) That Michael McCormick died on the 11th of July, 1912, in Blaine county, Idaho, and that at the time of his death he was a resident of Hailey, Blaine county; that he left an estate consisting of real and personal property of the value of about $25,000; (2) that July 12, 1912, William McCormick and L. L. Sullivan, as attorney in fact for certain heirs, made application to the probate court of Blaine county for issuance of letters of administration to F. R. Brownell in said estate; (3) that on the 15th day of July William McCormick filed in the probate court his petition for leave to withdraw his name from the petition filed on July 12, 1912, and revoking his request for the appointment of Brownell, for the reason that at the time he signed the petition McCormick was misinformed as to his rights as next of kin, and signed the same under a misapprehension of the law and the facts in the case; (4) that thereafter the probate court made an order setting July 23, 1912, for a hearing on the petition of McCormick and also the petition of Brownell and Sullivan as attorney in fact, and that said date of hearing was duly postponed until July 24th, and that a hearing was then had, and the probate court refused to allow William McCormick to withdraw his name from the petition and refused and denied the application of McCormick to revoke his request for the appointment of Brownell; (5) that on the 24th day of July, William McCormick made application for the issuance of letters of administration to himself in said estate and also filed a revocation revoking his request filed on the 12th day of July, for the issuance of letters of administration to Brownell, declaring the same to be null and void; said revocation alleged that McCormick was not informed as to his rights under the law as next of kin, and that said request was signed by him under a misapprehension of the law and the facts in the case; (6) that both applications or petitions for letters of administration were brought on for hearing on the 5th of August and the probate court,

after hearing, ordered that Brownell be appointed administrator of said estate; (7) that on the 6th of August the probate judge entered an order appointing Brownell administrator of the estate of Michael McCormick, deceased, and on the 8th issued letters of administration to Brownell; (8) that William McCormick at the time he signed the application for the appointment of Brownell as administrator was not misinformed as to his rights as next of kin, and that he did not sign the same under a misapprehension of the law and facts, but that McCormick signed the same freely and voluntarily, and that he was not acting under duress or undue influence in any manner whatever, and that within three months prior to the time of signing and filing said application for appointment of Brownell he had been duly advised and informed of his rights as next of kin in the estate of said Michael McCormick; (9) that Brownell prior to the time that McCormick withdrew his name from the petition to appoint Brownell, and with the understanding that his appointment as such administrator would be satisfactory and agreeable to McCormick, went to expense and trouble in said matters in applying for letters of administration in said estate; (10) that no fraud was practiced by Brownell or anyone in his behalf in reference to matters connected with the appointment of Brownell as administrator.

From these facts the court concluded as a matter of law: (1) That William McCormick in signing his application renounced and waived any right or preference which he might have to be appointed administrator, and by signing the application for the appointment of Brownell under the facts is estopped from revoking or retracting his renunciation; (2) that McCormick had no right to withdraw his name from the petition requesting the appointment of Brownell as administrator; (3) that William McCormick is not entitled to have letters of administration issued to him in said estate; (4) that Brownell is entitled to have letters of administration issued to him in said estate of Michael McCormick.

Judgment was rendered accordingly. This appeal is from the judgment.

A number of errors are assigned and will be considered in the order in which they are presented by counsel for appellant and answered by counsel for respondent.

It is first contended that the evidence is insufficient to show that Michael McCormick died intestate. Appellant relies upon sec. 5364, Rev. Codes. This section provides in part: "The fact of his dying intestate must be proved by the testimony of the applicant or others." There is no merit in this contention. The record shows that both appellant and respondent presented petitions to the probate court for appointment of such appellant and respondent as administrator of the estate of Michael McCormick, and in such petitions it is alleged that the deceased died intestate, and the evidence supports the allegations.

Errors 2 and 3 will be considered together. Error 2 is to the effect that the evidence does not show that Brownell was competent, and without the request of William McCormick under the provisions of our statute he could not be appointed administrator; and error 3 is to the effect that no *bona fide* petition was ever filed in this case until William McCormick filed his application for letters of administration. It will be observed that the two errors assigned are so closely related that the determination of either one of such assigned errors in effect determines both assignments. There is no contention in this case that Brownell was an heir of Michael McCormick; but it appears that William McCormick was a nephew of Michael McCormick, and was a resident of Hailey, Blaine county, Idaho.

Sec. 5351 enumerates the classes of people who, upon proper application, may be appointed as administrators of the estate of a person dying intestate. Such order is as follows: "1. The surviving husband or wife or some competent person whom he or she may request to have appointed; 2. The children; 3. The father or mother; 4. The brothers; 5. The sisters; 6. The grandchildren; 7. The next of kin entitled to share in the distribution of the estate; 8. Any of the kindred; 9. The public administrator; 10. The creditors; 11. Any person legally competent."

Thus it will be seen that any person legally competent may be appointed administrator of an estate, if no one falling in the other ten classes desires appointment. In the present case, Brownell was not of kin to the deceased, and therefore could not have been appointed administrator, except upon nomination or written request of the person entitled to appointment as provided by Rev. Codes, sec. 5365. In the present case Brownell was competent upon nomination, by request made by William McCormick, who was a nephew, one within the classification specified by sec. 5351. The record shows that a petition was filed by William McCormick jointly with L. L. Sullivan, attorney in fact for other heirs, asking for the appointment of F. R. Brownell, and this petition was signed by one party who was interested in the estate, and by the attorney in fact of other alleged heirs, and was a proper application under the provisions of secs. 5351 and 5365, Rev. Codes.

If no other papers had been filed and proper legal notice had been given of such application, and a hearing had, the probate judge would have been authorized to appoint F. R. Brownell as administrator.

It will thus be seen that if no person falling within the first ten subdivisions of sec. 5351 should apply, that any person legally competent may apply and be appointed administrator. In the present case Brownell was not of kin to the deceased, and therefore could not apply for appointment, except upon nomination or written request of a person entitled to appointment. On July 12, 1912, when the petition signed by William McCormick and L. L. Sullivan, attorney in fact, was filed, so far as the record in this case shows, F. R. Brownell was a competent person to make a petition for appointment as administrator, under the provisions of secs. 5351 and 5365, upon the written request of the person entitled to the appointment.

The record shows, however, that on July 15, 1912, three days after the petition of McCormick for the appointment of Brownell and before any action had been taken by the probate judge, McCormick filed with the probate judge

a petition revoking his request for the appointment of Brownell, for the reason that at the time he signed said petition, the petitioner was misinformed as to his rights as next of kin in the premises. This revocation was prior to the time when the order was made by the probate judge appointing Brownell administrator. At the time this petition for revocation was presented to the court, no action had been taken by the probate court and no right had been acquired by Brownell. There can be no question but that William McCormick on the 24th of July, 1912, made a proper application for the issuance of letters of administration to himself in said estate, and on said day filed a revocation of his request filed on the 12th of July for the issuance of letters of administration to Brownell.

The sections of the statute cited show clearly that it was the intention of the legislature to grant to the person entitled to administration the power to select some competent person to discharge the duties of the office, and that the probate court is limited in its power and is required to act wholly upon the desire and request of the person who is entitled to the appointment, and if such person applies for the appointment of a stranger or a person not of kin, the appointment depends wholly upon the request of one who is of kin, if there is such kin, and such person of kin can control the appointment until the probate judge has acted upon the appointment by appointing the person so nominated.

At the time that William McCormick filed his revocation of the request for the appointment of Brownell, nothing had been done by the probate court which in any way conferred any right upon Brownell, or which took away from any other person, who could or was authorized to be appointed, any right bestowed upon any such person, by reason of the filing of the request to appoint Brownell. The action by McCormick revoking his application was simply the exercise of a right he had of withdrawing a privilege which was specifically granted to him under the statute. It follows, therefore, that while Brownell was competent to be appointed, yet he could not be appointed administrator without a valid petition being filed, and upon the withdrawal of McCormick, who was the peti-

tioner, there was no petition on file which would authorize the appointment of Brownell. (*Estate of Shiels*, 120 Cal. 347, 52 Pac. 808; 18 Cyc. 98; 11 Am. & Eng. Ency. Law, 757; *Rowell v. Adams*, 83 S. C. 124, 65 S. E. 207.) Neither can the application filed by Sullivan, as attorney in fact, authorize the appointment of Brownell under the petition filed, because such petition clearly shows that McCormick was an heir and a resident within the state, and that being true, he was the only person who could be appointed without his consent and nomination; so that at the time that Brownell was appointed administrator of the estate of Michael McCormick, there was no petition or application on file in the probate court of Blaine county, Idaho, which empowered the probate judge to appoint the respondent administrator of the estate of Michael McCormick, deceased.

Sec. 5366, Rev. Codes, recognizes the right to revocation in certain classes of cases, and it provides, ''When letters of administration have been granted to any other person than the surviving husband or wife, child, father, mother, brother or sister of the intestate, any one of them who is competent, or any competent person at the written request of any of them, may obtain the revocation of the letters and be entitled to the administration, by presenting to the court a petition praying the revocation, and that letters of administration be issued to him.''

Under this provision a competent person at the request of any of the classes named in the section may obtain a revocation of a request to appoint any other person than those mentioned in the statute. (*Estate of Daggett*, 15 Ida. 504, 98 Pac. 849.) This latter section, however, does not apply to the petition of McCormick for revocation of his request to appoint Brownell, for the reason that he does not belong to any of the classes provided for in said section. The right, however, to withdraw his application for the appointment of a person to the office to which he himself was entitled, under the law, is a right belonging to himself, and it did not belong to Brownell in any way whatever under the law, but depends wholly upon the nomination and consent of McCormick.

The law recognizes the right of a person of kin to nominate and request the appointment of a competent person as administrator, where the person of kin does not desire to be appointed, and where a person of kin nominates and requests the appointment and the same is filed with the probate judge for the appointment of a person to the office, until such petition is acted upon by the probate judge, such request may be withdrawn and the one of kin has the right to make application for the appointment of himself as administrator, and the former nomination and request is of no force or effect.

Assignment of error No. 4, that McCormick was ignorant of his rights as next of kin at the time he signed the request for the appointment of Brownell, is contrary to the evidence, as the evidence does support the fact that he was fully informed by counsel of his rights at the time. There is no evidence to support this assignment of error.

Error No. 5 does not require any discussion. Error No. 6 has been fully covered in the discussion of other questions heretofore. Error No. 7 has been fully discussed under error No. 3.

We think there can be no question in this case but that the district court erred in the first conclusion of law, wherein the court concluded that under the law William McCormick, in signing his application and request for the appointment of F. R. Brownell as administrator of the estate of Michael McCormick, deceased, thereby renounced and waived any right or preference which he might have to be appointed administrator, and by signing said application for the appointment of Brownell he is estopped from revoking or retracting his renunciation as aforesaid. Second, that the court erred in his second conclusion of law, wherein it is held that William McCormick had no right to withdraw his name from the petition which he signed requesting the appointment of Brownell as administrator. Third, the court erred in holding that William McCormick is not entitled to have letters of administration issued to him in said estate. Fourth, that the court erred in the fourth conclusion of law, wherein it is held that F. R.

Brownell is entitled to have letters of administration issued to him in said estate of Michael McCormick.

For these reasons the judgment is reversed, and the trial court is directed to make findings in accordance with this opinion and enter a judgment reversing the probate court, and to order that the case be remanded to the probate court with directions to the probate court to make findings and enter judgment in accordance with the opinion of this court. Costs awarded to appellant.

Ailshie, C. J., concurs.

Sullivan, J., did not sit at the hearing or participate in the determination of the case.

### ON REHEARING.

#### (November 29, 1913.)

