(October 9, 1916.)

## NORTHERN PACIFIC RAILWAY COMPANY, Appellant, v. D. C. HIRZEL and JANE DOE HIRZEL, THE CITY OF LEWISTON et al., Respondents, and NORTHERN PACIFIC RAILWAY COMPANY, Appellant, v. CASPER NEUKAM, THE CITY OF LEWISTON et al., Respondents.

### [161 Pac. 854.]

PUBLIC LANDS—PUBLIC SURVEY—MEANDER LINE—RIPARIAN OWNERS— PATENTS TO LANDS FROM THE UNITED STATES—BEDS OF NAVIGABLE WATERS—TITLE TO IN STATE—NAVIGABILITY OF RIVERS—COMMON-LAW RULE—PUBLIC LANDS.

1. *Held,* under the United States survey, as appears from the field-notes and plats thereof, the Newell grant of 5.05 acres of land borders on Snake river.

2. *Held,* that block 2 of the city of Lewiston borders on Snake and Clearwater rivers.

3. The title to beds of navigable streams of this state does not pass to the patentees of the United States by the sale of lots or lands bordering on such streams.

4. The state holds the title to the beds of the navigable streams below the natural or average high-water mark, for the use and benefit of the whole people.

5. Sec. 18, Rev. Codes, by which is adopted the common law of England, so far as it is not repugnant to, or in conflict with, the laws of the United States or the constitution and laws of this state, adopts only so much of the common law as is applicable to the conditions of this state.

6. The reason for the common-law rule of riparian rights does not exist in this state; therefore that common-law rule does not exist

and the common law of England under such conditions would find another rule which would fit the case.

7.  There never was a common-law doctrine in England in regard to such rivers as we have in the United States, for the reason that no such streams exist in England.  That being the case, there could be no common-law doctrine in England as to the conditions that did not exist there.

8.  In this country the ebb and flow of the tide is not a true test of the navigability of a river, and so far as this state is concerned, the common-law rule in regard thereto was merely an arbitrary one and not applicable here.  The real test of the navigability of a stream in this country is whether it is in fact navigable.

9.  The state holds the title to the beds of all navigable streams in this state for the benefit of the public, and the riparian owner's right only extends to the high-water mark.

10.  The terms "public lands" and "public domain" are used in the United States statutes and decisions to designate such lands as are subject to sale or other disposal under the general laws of the United States or the states, and are habitually used by the legislature to describe such lands as are subject to sale or other disposal under the general laws of the state.

11.  Grants by the United States under the public land laws of the government of lands bordering on or bounded by navigable waters do not convey, of their own force, any title or right below high-water mark.

12.  We have no statute law granting a riparian owner on a navigable stream the bed of such stream or any portion thereof.

13.  The "public lands" referred to in art. 9 of the state constitution, and which are subject to disposal by the state land board under laws to be enacted by the legislature, do not include the beds of navigable waters or lands thereunder below high-water mark.

14.  The rights of the state land board, under our present law, so far as the public lands of the state are concerned, are confined to lands expressly granted by act of Congress and to such lands as are subject to settlement and sale.

15.  Under the provisions of secs. 4, 6, 8, 9, 10 and 11 of the admission bill, admitting Idaho as a state, a grant of a designated number of acres of land for specific purposes was made, and the constitutional provisions found in art. 9 of the constitution, granting to the state board of land commissioners control over and disposal of all public lands, relates only to the lands granted to the state for specific purposes.

16.  The title to the beds of navigable streams passed to the state on its admission into the Union, without any special grant, for the

benefit of the public, and the state acquired absolute property in, and dominion and sovereignty over, all soils under the navigable waters within its borders.

17. It is the duty of the legislature to enact proper laws for the management and control of the beds of such waters.

18. Wherever a city, town or village is a riparian owner on navigable waters, it takes title to the lands owned by it to high-water mark.

19. *Held*, under the various acts passed by the territorial and state legislatures, granting to the city of Lewiston certain rights in regard to said rivers and the right to sell or lease any property dedicated to any specific public use, the state did not part with its title to the beds of said waters, since the legislature could not thus alienate such title, and such acts of the legislature must be construed so as not to permit the city to unreasonably interfere with the use of such rivers by the public.

20. *Held*, that the title to the beds of said streams should not be quieted in either the appellant or respondent.

[As to general rules for location of boundaries, see note in 129 Am. St. 990.]

APPEAL from the District Court of the Second Judicial District, in and for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action to quiet title to certain parts of the beds of the Snake and Clearwater rivers bordering on the city of Lewiston. Judgment quieting title in the mayor-trustee for the city. *Reversed.*

James E. Babb, for Appellants.

A description running "to the bank" or "along the bank" is sufficient to convey the bank and riparian rights, including the soil to the center of the stream. (5 Cyc. 903; *St. Clair Co. v. Lovingston*, 23 Wall. 46, 23 L. ed. 59; *Luce v. Carley*, 24 Wend. (N. Y.) 451, 35 Am. Dec. 637; *Starr v. Child*, 20 Wend. (N. Y.) 149; *Johnson v. Johnson*, 14 Ida. 561, 575, 95 Pac. 499, 24 L. R. A., N. S., 1240; *Moss v. Ramey*, 14 Ida. 598, 95 Pac. 513.)

The fact that the transfers made by the mayor-trustee are of areas of land shown as lots in blocks on a plat, the lots

having definite lines surrounding them, does not prevent the
titles deeded by the mayor-trustee from carrying to the center
of the stream outside of and beyond the lines surrounding
the lots. (*Wait v. May,* 48 Minn. 453, 51 N. W. 471; *Han-
lon v. Hobson,* 24 Colo. 284, 51 Pac. 433, 42 L. R. A. 502;
*Bissell v. New York Cent. Ry. Co.,* 23 N. Y. 61; *Geddes
Coarse Salt Co. v. Niagara, Lockport & Ontario Power Co.,*
207 N. Y. 500, 101 N. E. 456; *City of Dubuque v. Maloney,*
9 Iowa, 450, 74 Am. Dec. 358; *Varick v. Smith,* 9 Paige, 547,
5 Paige, 151, 28 Am. Dec. 417; *Lincoln v. Wilder,* 29 Me.
169; *Paine v. Consumers' Forwarding & Storage Co.,* 71 Fed.
626, 19 C. C. A. 99; *Banks v. Ogden,* 2 Wall. 68, 17 L. ed.
818; *Lembeck v. Nye,* 47 Ohio St. 336, 24 N. E. 686, 8 L. R. A.
578; *Bissell v. New York Cent. R. R. Co.,* 23 N. Y. 61; *Jarstadt
v. Morgan,* 48 Wis. 248, 4 N. W. 27; *Paul v. Carvon,* 26 Pa. St.
223, 67 Am. Dec. 413.)

The city has been misled in its undertaking to find some
strips of land along the shore to which the owners have no
title, and which it is claimed were not included within cer-
tain of the surveys. The rights of the parties interested
depend upon the meaning and legal effect of the field-notes
of government surveys. (*Quicksilver Min. Co. v. Hicks,* 4
Sawy. 688, Fed. Cas. No. 11,508; *Hardin v. Jordan,* 140 U. S.
371, 11 Sup. Ct. 811, 838, 35 L. ed. 428; *Mitchell v. Smale,*
140 U. S. 406, 11 Sup. Ct. 822, 840, 35 L. ed. 442; *Ex parte
Davidson,* 57 Fed. 885; *Railroad Co. v. Schurmeir,* 7 Wall.
(74 U. S.) 272, 19 L. ed. 74; *Kirwan v. Murphy,* 83 Fed.
275, 28 C. C. A. 348; *Coburn v. San Mateo County,* 75 Fed.
520.)

Chief Justice Sullivan in his dissent'·~ opinion in *John-
son v. Johnson,* 14 Ida. 561, 597, 95 Pac. 499, 24 L. R. A.,
N. S., 1240, expressly approved the doctrine of title to low
water instead of to high water mark. That much was held
at least and also unanimously in *Johnson v. Hurst,* 10 Ida.
308, 77 Pac. 784.

In a state where there are mountain streams which have
a large quantity of flood waters at certain seasons of the
year and become very low at other seasons of the year, there

is a large stretch of land between the high and low water mark, and this question becomes very important. The doctrine limiting to high-water mark would cut the adjacent owner off from all contact with the stream a large portion of the year, and would prevent access and wharfing out and other improvements connecting the bank with the stream, which improvements in a state where the conditions are such as they are in Idaho must extend from high to low water mark. Such rights have been repeatedly declared by unanimous opinion of this court. (*Powell v. Springston Lumber Co.,* 12 Ida. 723, 88 Pac. 97; *Shephard v. Coeur d'Alene Lumber Co.,* 16 Ida. 293, 101 Pac. 591; *Small v. Harrington,* 10 Ida. 499, 79 Pac. 461; *Yates v. City of Milwaukee,* 10 Wall. 497, 19 L. ed. 986; *State v. Korrer,* 127 Minn. 60, 148 N. W. 617, 1095.)

Even if the bank of the stream were on the north boundary of A street, which, however, there is no evidence to show, or even if it were north of the center of A street, which there is no evidence to show, and even if the stream did not bank on the north line of block 6, plaintiffs' fee title goes not only to the center of the street, but clear through to the center of the stream beyond. (*Wait v. May,* 48 Minn. 453, 51 N. W. 471; *White v. Jefferson,* 110 Minn. 276, 124 N. W. 373; 32 L. R. A., N. S., 778; *Gifford v. Horton,* 54 Wash. 595, 103 Pac. 988; *In re Robbins,* 34 Minn. 99, 57 Am. Rep. 40, 24 N. W. 356; *Johnson v. Grenell,* 112 App. Div. 620, 98 N. Y. Supp. 629; *Taylor v. Armstrong,* 24 Ark. 102; *Empenger v. Fairley* (*In re Schmeidel's Estate*), 119 Minn. 186, 137 N. W. 1110.)

A street bounded by a river on one side extends to the center of the river. (*Chicago, R. I. & Pac. Ry. Co. v. People,* 222 Ill. 427, 78 N. E. 790; *Village of Brooklyn v. Smith,* 104 Ill. 429, 44 Am. Rep. 90; *Village of Pewaukee v. Savoy,* 103 Wis. 271, 74 Am. St. 859, 79 N. W. 436, 50 L. R. A. 836; *Lake Shore & M. S. R. Co. v. Platt,* 53 Ohio St. 254, 41 N. E. 243, 29 L. R. A. 52; *State v. Yates,* 104 Me. 360, 71 Atl. 1018, 22 L. R. A., N. S., 592; *Lockwood v. New York & N. H. R. Co.,* 37 Conn. 387; *Hathaway v. Milwaukee,* 132 Wis. 249,

122 Am. St. 975, 111 N. W. 570, 9 L. R. A., N. S., 778; *Hanford v. St. Paul & D. Ry. Co.*, 43 Minn. 104, 42 N. W. 596; *Dana v. Craddock*, 66 N. H. 593, 32 Atl. 757; *McCloskey v. Pacific Coast Co.*, 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A., N. S., 673; *Stetson v. City of Bangor*, 60 Me. 313.)

It is clear from *Shephard v. Coeur d'Alene Lbr. Co.*, 16 Ida. 293, 101 Pac. 591, and the case of *Chicago, R. I. & P. Ry. Co. v. People*, 222 Ill. 427, 78 N. E. 790, that "waterfront" means a place for public use that has been dedicated as such, and that unless so dedicated or lawfully acquired it cannot be imposed upon the property in private ownership.

The plaintiff and its predecessors having been in possession of and operating a railroad on all this land from Snake river bridge on Main street north and east since 1898, and no one else in possession of any part thereof, any claim in the interest of the people of any portion of the public, including the title of the mayor as trustee for the public, is barred by sec. 4035, Rev. Codes. (*People v. Banning Co.*, 167 Cal. 643, 140 Pac. 587.)

A limitation applicable to the state applies to all lesser political subdivisions. (*Bannock County v. Bell*, 8 Ida. 1, 101 Am. St. 140, 65 Pac. 710; *Canyon County v. Ada County*, 5 Ida. 686, 51 Pac. 748.)

Such a grant as this is within the limits of the trust, in the case of the state title, and of the burdens in favor of the public, in case of private riparian title, subject to which such title is held. (*Gould v. Hudson River R. Co.*, 6 N. Y. 522; *Stevens v. Patterson etc. R. R. Co.*, 34 N. J. 532, 2 Am. Rep. 269; *Tomlin v. Dubuque, Bellevue & Miss. R. R. Co.*, 32 Iowa, 106, 7 Am. Rep. 176; *Chicago B. & Q. R. R. Co. v. Porter*, 72 Iowa, 426, 34 N. W. 286.)

The holding as declared in the last case was based upon the doctrine of state ownership of shore lands, announced in *McManus v. Carmichael*, 3 Iowa, 1; *Bowlby v. Shively*, 22 Or. 410, 30 Pac. 154, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. ed. 331.

The state, as trustee for the public in holding the title to land under navigable rivers within its borders, may give a valid grant thereof to a railroad corporation for railroad

purposes, subject only to existing easements of riparian owners. (*Saunders v. New York, C. & H. R. R. Co.*, 144 N. Y. 75, 43 Am. St. 725, 38 N. E. 992, 26 L. R. A. 378.)

Plaintiff's title to use and occupancy of street and other land is not a mere "license" as declared in the findings and conclusions and decree, but is a perpetual property right. (*Boise Artesian Hot & Cold Water Co., v. Boise City*, 230 U. S. 84, 33 Sup. Ct. 997, 57 L. ed. 1400.)

Chas. H. Chance, Fred C. Butler and McNamee & Harn, for Respondents.

We believe that a fairly correct solution of these cases can be reached by the application, so far as the Hirzel or Snake river case is concerned, of *Callahan v. Price*, 26 Ida. 748, 146 Pac. 732, where it is decided that a government grant extends to a natural high-water mark only. As to the Neukam or Clearwater river case, the application of the *Callahan v. Price* case, *supra*, with the applicaton of the principle enunciated in the case of *Banks v. Ogden*, 2 Wall. (U. S.), 57, 17 L. ed. 818, gives us a solution of this case. In the case last cited it is held by the United States supreme court that where a street is laid out between a platted block and navigable water, the owner of the block can acquire title only to the center of the street.

Actual contact with the water is necessary to give riparian rights. (Farnham on Waters, sec. 66b.)

The supreme court of the United States has continuously decided that the different states may adopt whatever rule they please as to whether or not, under grants from the government, the patentee owns to high-water mark, to low-water mark, or to the thread of the stream. (Farnham on Waters, sec. 50; *Barney v. Keokuk*, 94 U. S. 324, 24 L. ed. 224; *Packer v. Bird*, 137 U. S. 661, 11 Sup. Ct. 210, 34 L. ed. 819; *Hardin v. Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 35 L. ed 428.)

The grantees of the mayor-trustee could only take to the lot line; they took their lots according to plat and they are

confined to their lot lines; this is true whether the lots were in a government town site or in a dedication by an individual. (*State v. Forrest,* 12 Wash. 483, 41 Pac. 194; *Kenyon v. Knipe,* 2 Wash. 394, 27 Pac. 227, 13 L. R. A. 142; *Kenyon v. Squire,* 2 Wash. 405, 28 Pac. 1025.)

If the grant is bounded by a well-marked line which is not coincident with the water, the title will extend only as far as the line, and the grantee will acquire no riparian rights. (*McCormick v. Huse,* 78 Ill. 363; *Fulton v. Frandilog,* 63 Tex. 330; *Moseley v. Jamison,* 1 A. K. Marsh. (Ky.) 606.)

Grants by Congress of portions of public lands within a territory do not of themselves convey title below high-water mark. (29 Cyc. 367; *Astoria Exchange Co. v. Shively,* 27 Or. 104, 39 Pac. 398, 40 Pac. 92; *Shively v. Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 38 L. ed. 331, affirming 22 Or. 410, 30 Pac. 154.)

Where the grant does not extend to high-water mark, no riparian rights pass to the grantee. (*Bailey v. Burgess,* 11 R. I. 330.) If the grant is bounded by the bank no water will be included. (*Hatch v. Dwight,* 17 Mass. 289, 9 Am. Dec. 1415; *Starr v. Child,* 5 Denio (N. Y.), 599; *Halsey v. McCormick,* 13 N. Y. 296; *Bradford v. Cressey,* 45 Me. 9; *Thomas v. Hatch,* 3 Sumn. 178, Fed. Cas. No. 13,899.)

If the grantor, after giving the line to the river, bounds the land by the bank of the river, or describes the line as running along the bank of the river, or bounds it upon the margin of the stream, the bank is the boundary. (*People ex rel. Highway Commrs. v. Madison County Suprs.,* 125 Ill. 9, 17 N. E. 147; *Murphy v. Copeland,* 51 Iowa, 515, 1 N. W. 691; *Rockwell v. Baldwin,* 53 Ill. 19; *Jenkins v. Cooper,* 50 Ala. 419.)

A boundary on the right bank of a river does not give the grantee the rights of a riparian owner. (*Greene v. Nunnemacher,* 36 Wis. 50.)

Where three sides and the number of acres are given, and it is disputed whether the fourth side is a straight or meander line, the straight line will be adopted when the tract thus

inclosed contains the number of acres called for, and where the acreage would be largely increased were the meander line adopted. (*Hostetter v. Los Angeles Co. Terminal Ry. Co.*, 108 Cal. 28, 41 Pac. 330.)

A state has absolute power to grant its lands under water unless prohibited by statute. (29 Cyc. 357, citing cases from California, Georgia, Maryland, Michigan, New Jersey, New York, Ohio, Oregon, Texas, Washington, and the United States courts.)

The English doctrine of riparian rights has been repeatedly held not applicable to this country, especially as to navigable, nontidal rivers and lakes which practically do not exist in England. (*Reno Smelting Works v. Stevenson*, 20 Nev. 269, 19 Am. St. 364, 21 Pac. 317, 4 L. R. A. 60; *People v. Canal Appraisers*, 33 N. Y. 461.)

"An intervening public street or other public way between private ownership and the exterior line of the waterfront prevents the acquisition of riparian rights by the owners of opposite side of the street." (29 Cyc. 334; *Allen v. Munn*, 55 Ill. 486.; *St. Louis Public Schools v. Risley*, 10 Wall. (U. S.) 91, 19 L. ed. 850; *Banks v. Ogden*, 2 Wall. (U. S.) 507, 17 L. ed. 818; *Turner v. Peoples Ferry Co.*, 21 Fed. 90; *Dalton v. Hazlet*, 182 Fed. 561, 105 C. C. A. 99; *Smith v. St. Louis Public Schools*, 30 Mo. 290; *Brisbane v. St. Paul Ry. Co.*, 23 Minn. 114; *Barclay v. Howell's Lessee*, 6 Pet. 498, 8 L. ed. 477; *Schenley v. Pittsburg*, 104 Pa. 472; *Webb v. Demopolis*, 95 Ala. 116, 13 So. 289, 21 L. R. A. 62; *Haslett v. New Albany Belt & Terminal Co.*, 7 Ind. App. 603, 34 N. E. 845.)

A state of the Union has authority to delegate to a municipality the control of its harbor or waterfront. (28 Cyc. 923; *Ill. Cent. R. R. Co. v. State of Illinois*, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. ed. 1018.)

The state has power to grant the lands under water to municipal corporations for the promotion of its commercial prosperity. (*Langdon v. New York*, 92 N. Y. 427.)

The state may delegate its public trust, with regard to the control of water frontage and submerged land under navigable

water, to a municipal corporation. (*Farnum v. Johnson,* 62 Wis. 620, 22 N. W. 751; *Coffin v. Portland,* 27 Fed. 412.)

"Among the muniments of title in fee of municipal corporations, are legislative grants in charter or other acts, and a municipal corporation may acquire title by prescription or adverse possession." (28 Cyc. 607.)

The right granted by a municipality to use its streets is called a franchise, but it is a franchise in the secondary rather than the primary sense of the word. Indeed, it seems that it is more in the nature of a license. The city cannot surrender its governmental or police powers. (Elliott on Roads and Streets, 3d ed., sec. 1050.)

We therefore contend that the vacation or abandonment of a street to the use of the railway company was a license only.

SULLIVAN, C. J.—This appeal involves two actions brought by the appellant, the Northern Pacific Railway Company (which will, for convenience, hereafter be called the railway company), one against D. C. Hirzel and wife, and the other against Casper Neukam. The action against Hirzel is to quiet title against Hirzel and wife to land between the banks of Snake river and the center of the main stream, including an unsurveyed island occupied by respondent Hirzel at the confluence of the Clearwater and Snake rivers at the city of Lewiston, and may for convenience be referred to as the Snake river case. The suit against Neukam is to quiet title to land between the bank of Clearwater river and the center of the stream at the foot and west of Fifth street and north of Block 6 and from A street north of said block in said city of Lewiston, and may be referred to as the Clearwater case.

John B. Morris, as mayor-trustee of the city of Lewiston, filed a complaint in intervention in each case, whereby he claimed for the city, as mayor-trustee, the land claimed by the plaintiff and prayed that title be quieted in him as trustee for the city. Hirzel filed his answer and Neukam defaulted, and thereafter made a motion to open the default, which was de-

nied, and his answer, filed after default was entered, was stricken from the files and he did not thereafter answer.

Upon the issues made, judgment and decree in each case was entered in favor of the mayor-trustee and the title to the land involved quieted in him.

The plaintiff, the railway company, appealed from the judgment entered in both of said cases.    Neither of the defendants, Hirzel or Neukam, appealed, and the controversy in this court is now between the railway company and the mayor-trustee alone.

It appears that the railway company claims the title of the state as well as title under the patents from the United States and by vacation of streets from the city; the mayor-trustee in both cases claims title by virtue of a town-site patent, by adverse possession, by deed, by relinquishments, by grant from the state and perhaps through some other sources.

Numerous errors are assigned, a number of which involve the sufficiency of the evidence to support the findings of the court, and some involve questions of law wherein it is claimed the court erred in the trial of the case, and a reversal of the judgment is demanded.

In order that the issues involved in the two cases under consideration may be more readily understood, a brief history of the city of Lewiston and of the title to the land involved will here be given.

The land upon which the city is situated is at the junction of the Clearwater and Snake rivers, Snake river being on the westerly side of the city and the Clearwater on the northerly side thereof.    There was some settlement made there as early as 1861.    When first settled, it was a part of the territory of Washington and the city of Lewiston was incorporated as a city by a legislative act of that territory early in 1863.    (See Laws Wash. 1863, p. 431.)    In that act the western boundary of the city was fixed as the middle channel of the Snake river and the northern boundary was the middle channel of Clearwater river.    Idaho was organized as a territory on March 3d, 1863, and in 1907, by legislative act, the Lewiston

city boundary was extended across and beyond the Clearwater river. (Sess. L. 1907, p. 349.)    When said city was first settled it was a part of the Nez Perce Indian Reservation.    It appears that the Indians executed an agreement in writing with one Robert Newell on the 9th day of June, 1861, which agreement was signed by the Chiefs of the Nez Perce tribe, granting to Newell a tract of land bordering on the easterly bank of Snake river within the present limits of the city of Lewiston, consisting of 5.05 acres.    The treaty between the government and the Indians extinguishing their title to the land on which the city is located was concluded on June 9, 1863, and was ratified April 17, 1867, and thereafter the survey of the Newell tract was made on September 28th and 29th, 1868.    Said tract is described by metes and bounds, being 250 yards on the easterly side, 100 yards at the northerly end and 90.75 yards on the southerly end, the westerly line bordering on Snake river.    It is the contention of the intervenors in the Hirzel case that the westerly side line of said Newell grant limits the ownership of the lands within the exterior boundary lines of said grant and that the ownership does not extend to the thread of said river.    The land included in said grant is owned by the appellant railway company.

Patent from the government was not issued to Newell until nearly twelve years after the Indians had executed said instrument in writing to Newell and nearly ten years after said treaty was entered into.

The survey of the Newell grant was made prior to the survey by the government of the other lands involved in this case, and at the time the Newell grant was surveyed the government had not run the meander line of Snake river.    It appears that the government ran said meander line September 26, 1870, and that on September 3, 1873, the government made a survey of the legal subdivisions now included in said city, and on June 1, 1874, such government survey was approved.

In August, 1874, E. B. True made a survey and plat of the Lewiston town site, and on April 10, 1875, patent for the Lewiston town site was issued by the government to the mayor-

trustee of said town. The defendant Hirzel was a squatter on a sandbar in Snake river immediately west of the Newell tract and of Block 2 of said city as surveyed by said True. The land claimed by Hirzel at ordinary high water is an island; in very high water it is entirely submerged, and in very low water it is a peninsula. The government has refused to make a survey of this peninsula or island.

The land bordering on the Clearwater, squatted on by defendant Neukam, is entirely submerged during high water, except perhaps that portion on which buildings are situated, and they are in what was platted by True as A street of said city.

However, since judgment and decree was entered against Hirzel and Neukam and they have not appealed, their rights are not involved in this controversy between the appellant and the mayor-trustee.

We herewith insert a copy of a portion of the official plat of True's survey of said town site showing the land in controversy:

The following is a plat of the government survey of a part of Sec. 36, Tp. 36 N., R. 6 W., B. M.

MAP OF PART OF FRACTIONAL TOWNSHIP 36 NORTH OF RANGE 6
WEST, BOISE MERIDIAN.

SCALE: $1''=40$ CHAINS.

A part of the town site of Lewiston is located on said sec. 36. Surveyor True surveyed and platted only a part of the land patented to the mayor-trustee, and the patent includes 561.31 acres for which the mayor-trustee paid $701.51¼, that being at the rate of $1.25 per acre.    The said Newell grant of 5.05 acres is in Lot 2 of said section, as shown by the government survey.    Said lot contains 43.90 acres including said Newell grant.    Deducting the 5.05 acres included in the Newell grant from the 43.90 acres contained in said lot, leaves 38.85 acres in said lot, for which the said mayor-trustee paid at the rate of $1.25 per acre.    It will be observed from the government plat that said Snake river borders on the westerly side of said Lot 2, and the Clearwater river borders it on the north.    While there is some contention as to whether the Newell grant bor-

dered on Snake river, the government survey, as shown by said plat, settles that matter in favor of the contention that said Lot 2 and the Newell grant border on said Snake river on the west and is coterminous with the government meander line of said rivers along said lot. The United States survey field-notes of the Newell grant show that said grant borders on Snake river. The field-notes read in part as follows:

"To determine the course of the east boundary of the tract, I ran a temporary line north from the place of beginning 250 yards and commenced at the right bank of Snake river due west of this point and measured east 100 yards and set up an object. . . . . The bank being nearly perpendicular I set a witness corner three feet east of the line corner. . . . . S. 7½ degrees W. from true corner along the right bank of Snake river upstream. . . . . Being 40.70 yards—set the S. W. corner on bank of Snake river."

It appears from the field-notes and plats introduced in evidence that it was intended that the Newell grant should border on Snake river, and it did border on said river. Plaintiff's exhibit N, above inserted, shows that Lots 1 and 2 on the north border on Clearwater river. However that may be, it cannot change the main question here presented for determination and as we understand the case, both parties desire to have the question settled—that is, whether the city or the railway company has the title to the bed of said streams bordering on the city of Lewiston below high-water mark, from the bank to the center of said streams.

Counsel for respondents lays considerable stress upon the survey and plat made by one Guilland, which plat shows the meander line of Snake river considerably west of the west boundary of the Newell grant. This plat was not put in evidence. According to Guilland's testimony and his plat, the government meander line extended out into Snake river. He claimed there was some mistake in the government survey, and that in order to correct it, under the rules established by the Interior Department, it threw the greater part of the meander line out into Snake river. His testimony is so at variance with the government plat it should not be given much weight, since

he testified that he did "not know" the west line of the Newell tract was coterminous with the bank of Snake river.

This court held in *Callahan v. Price,* 26 Ida. 745, 146 Pac. 732, that a patent from the United States for land bordering on a navigable lake or stream extended no farther than the natural high-water line, and at page 754 of said opinion the court said:

"It is therefore, we think, the settled law of this state, that no title to islands, lakes or the bed of navigable streams passes to the patentees of the United States by the sale of border lots, and that the state holds the title to the beds of navigable lakes and streams below the natural high-water mark for the use and benefit of the whole people, and that the right, title or interest of riparian proprietors or owners of uplands, to such shores are determined by the laws of the state, subject only to the rights vested by the constitution of the United States."

In that case the court expressly overruled *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47; *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, and *Ulbright v. Baslington,* 20 Ida. 539, 119 Pac. 292, 294, in so far as said cases conflict with the doctrine laid down in the Callahan-Price case.

Counsel for the respective parties have filed exhaustive briefs in which are reviewed many of the cases *pro* and *con* upon the question here involved. It is contended by counsel for appellant that by the provisions of sec. 18 of our Revised Codes, this state adopted the common-law doctrine of England, to the effect that the ownership in fresh-water streams, or the beds thereof, extends to the thread of the stream. Said section is as follows:

"The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these Revised Codes, is the rule of decision in all courts of this state."

By the adoption of that section this state did not adopt the common law of England when such common law was inapplicable to the conditions of the state. The territory and state of Idaho following the lead of other states having similar statu-

tory provisions, only adopted such provisions of the common law as were applicable to the conditions of the state. The English doctrine of riparian rights has been repeatedly held not applicable to this country, especially as to navigable, nontidal rivers and lakes, since such rivers and lakes did not exist in England. The Nevada statute in regard to adopting the common law of England is substantially the same as our own, and in *Reno Smelting M. & R. Works v. Stevenson,* 20 Nev. 269, 19 Am. St. 364, 21 Pac. 317, 4 L. R. A. 60, the court held that the ''Nevada General Statutes, 3021, adopting 'the common law of England so far as it is not repugnant to or in conflict with the laws of the United States, or the constitution and laws' of that State, adopts only so much of the common, law as is applicable to the condition of the state.''

Only such portions of the common law of England as were applicable to the conditions of this country have been adopted by the several states of this country. (*Boyer v. Sweet,* 4 Ill. 119; *Stuart v. People,* 4 Ill. 395 (404); *Poultney v. Ross,* 1 Dallas, 237 (238), 1 L. ed. 117; *Seeley v. Peters,* 10 Ill. 130, (150).)

It was stated by the court in *Shewel v. Fell,* 3 Yeates (Pa.), 17, that it was the province of the courts to judge in what cases the rules of the common law should be relaxed, owing to the difference in the conditions existing in this country; and in *People v. Canal Appraisers,* 33 N. Y. 461 (482), the court said: ''I think no doctrine better settled than that such portions of the law of England as are not adapted to our condition, form no part of the law of this state. This exception includes not only such laws as are inconsistent with the spirit of our institutions, but such as were framed with special reference to the physical condition of a country differing widely from our own.''

''The common law of England,'' said Judge Story, ''is not to be taken in all respects to be that of America. Our ancestors brought with them its general principles, and claimed it as their birthright; but they brought with them and adopted only that portion which was applicable to their position.'' (*Van Ness v. Pacard,* 27 U. S. (2 Pet.) 137, 7 L. ed. 374.)

The common law of England as to riparian rights has not been adopted by this state. In *McManus v. Carmichael,* 3 Iowa, 1, we think the court correctly solved the question as to whether or not the common-law doctrine of England, as to the ownership of the beds of navigable fresh-water streams, should be applied to large rivers of the United States, by stating in substance that there never was any common-law doctrine in England in regard to such streams, for the simple reason that such streams did not exist in England; that therefore there could be no common-law doctrine in England as to conditions that did not exist there. It was there held that the ebb and flow of the tide is not a real and virtual test of the navigability of a river, and that that rule is merely an arbitrary one and is not supported by reason; that the real test of the navigability of a stream is whether it is in fact navigable; that that fact is the foundation for navigability in law.

From the decisions it will be observed that those states which have no navigable waters other than those where the tide flows or whose rivers are small and their effectual navigability is limited, or nearly so, to the tidal waters, have held more nearly to the usual common-law test, and have applied the consequences as inferred at common law; while those states which have less relation to the salt waters or whose rivers are large and depend less upon tidal waters for their navigability in fact have been inclined to depart from the common-law rule.

The court in *McManus v. Carmichael, supra,* very pertinently asks the question whether the rules and tests which are applicable enough to the rivulets of England shall be taken to measure those waters whose flow is through the climates and zones of the earth, and navigable, in fact, hundreds and in some cases thousands of miles above the flow of the tide.

We therefore hold that the beds of the Snake and Clearwater rivers, they being navigable rivers, belong to the state and are held for the benefit of the public. The state holds the title for the benefit of the public, and is not limited in its right or title to the easement or right of way over such beds. As held in *Bowman's Devisees* and *Burnley v. Wathen,* 2 McLean

(U. S.), 376, Fed. Cas. No. 1740, on navigable streams the riparian right does not extend beyond high-water mark.

Some question is raised as to whether the beds of the navigable streams of the state come within the terms "public lands" or "public domain." Those terms are used in the United States statutes and decisions to designate such lands as are subject to sale or other disposal under the general laws of the United States or states, and are not held back or reserved for any special or governmental purpose.    (32 Cyc. 775.)

In *Newhall v. Sanger*, 92 U. S. 761, 23 L. ed. 769, the court said: "The words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws." (*Leavenworth R. R. Co. v. United States*, 92 U. S. 760, 23 L. ed. 634; *Doolan v. Carr*, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. ed. 844; *Mann v. Tacoma Land Co.*, 153 U. S. 273, 14 Sup. Ct. 820, 38 L. ed. 714; *Barber Lumber Co. v. Gifford*, 25 Ida. 654, 139 Pac. 557; *Moss & Bro. v. Ramey*, 25 Ida. 1, 136 Pac. 608.)

It will not be seriously contended that the lands below high-water mark of the navigable streams of the state are subject to sale or disposal under any existing general laws of the state as "public lands," regardless of the fact that this court in its early decisions endeavored to establish a law, which was clearly a legislative act and not judicial.

In *Barber Lumber Co. v. Gifford*, 25 Ida. 654, 139 Pac. 557, this court held: "We have no statute law whatever granting a riparian owner the bed of the stream." (*Moss v. Ramey*, 25 Ida. 1, 136 Pac. 608.)

In *Shively v. Bowlby*, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. ed. 331, it was held that grants by the United States under the public land laws, of lands bordering on or bounded by navigable waters, do not convey of their own force any title or right below high-water mark.

"Public lands," such as are referred to in art. 9 of the state constitution, and which are subject to disposal by the state land board under the laws enacted or to be enacted by the legislature, do not include the beds of navigable waters or lands thereunder below high-water mark.   The rights of the

state land board are confined to lands expressly granted by act of Congress and to such lands as are subject to settlement and sale. Sec. 4 of the Idaho admission bill is a grant of sections 16 and 36 in each township for the support of the common schools. Sec. 6 grants certain lands for the construction of public buildings. Sec. 10 grants 90,000 acres of land for an agricultural college, and sec. 11 is a grant of a designated number of acres for specific purposes, and our constitutional provision granting to the state board of land commissioners control over and disposal of all public lands relates only to these lands granted to the state by the act of Congress above mentioned, for specific purposes. We find nothing in the Idaho admission bill or in the constitution that makes any mention of the beds of streams or navigable waters. The title to the beds of navigable waters passes to the several states on their admission as states, without any special grant, for the benefit of the public, and no general law has been made by the legislature in regard to the disposition or proper control of such lands for the benefit of the public.

In the *Emma S. Peterson Case,* 39 Land Dec., p. 566, it is said: "Upon the admission of a state into the Union it acquires absolute property in and dominion and sovereignty over all soils under the navigable waters within its borders." (See decisions of the Supreme Court of the United States cited in the above case.)

Upon the admission of Idaho into the Union, it acquired absolute property in, and dominion and sovereignty over, the beds of the navigable waters, and it is the duty of the legislature to enact proper laws for the management and control of the beds of such waters. But the state should retain the title for the benefit of the general public and enact proper legislation for the control of such lands for the benefit of all the people.

We will next consider the source and extent of the trustee's title to the waterfront bordering on said rivers.

Wherever the municipality is a riparian owner on this waterfront, it would take title, under the late decisions of this court, to high-water mark. However, the city and mayor-trustee

base their title also upon other grounds.   By territorial stat-
ute passed in 1881, the city was authorized to lease the water-
front on said streams.   This statute was the law of the terri-
tory until the admission of Idaho as a state, when it became
validated under the provisions of sec. 21 of the Idaho admis-
sion bill.   It was also incorporated in the statutes of the state
by sec. 17, Rev. Codes, in regard to special territorial laws.
In 1879, by ordinance, the waterfronts of the city of Lewiston
were declared to be public highways, which ordinance consti-
tuted a dedication of such waterfronts for that purpose.   In
sec. 238 of the 1907 Lewiston charter (Sess. Laws 1907, p. 349),
it is provided that "The mayor and council may by ordinance,
vacate and sell or lease any property dedicated to any specific
public use."   This provision of the charter, which was enacted
by the legislature in 1907, is claimed by respondent to have the
effect of an absolute grant from the state to the city of all its
interest in the shores of the Snake and Clearwater rivers, sub-
ject, of course, to rights of navigation, and respondent cites 28
Cyc., p. 607, and authorities there cited.   It is stated in Cyc.
as follows: "Among the muniments of title in fee of municipal
corporations, are legislative grants in charters or other acts,—
and a municipal corporation may acquire title by prescription
or adverse possession."   (28 Cyc. 607.)   The rule there laid
down no doubt applies to many legislative grants, but it has no
application to attempted grants of title by the legislature to
beds of navigable streams; and a municipality cannot procure
title as against the state to the beds of navigable streams either
by prescription or adverse possession.   The title to such lands
must remain in the state for the benefit of the public.   The
state may, by legislation, grant certain rights or easements to
corporations or private persons for the use of such beds of
streams, but such easements or rights must not interfere with
the navigation of such streams.   The evidence shows that the
entire waterfront upon said rivers adjoining the city of Lewis-
ton has been used at one time or another as a public or common
waterfront, to which access was free to all comers, and the
ordinance passed by the city in 1879 dedicated said waterfront
as a highway, and it is contended by counsel for the mayor-

trustee that the act of February 10, 1881 (Sess. L., p. 384), empowered the city of Lewiston to lease the waterfront of the city, and that that act is a recognition by the state of the right of control in the city, if not the ownership of the waterfront.

Under our view of the case, these several legislative acts make no difference, so far as the real question involved in the case is concerned, since we hold that the title to the beds of said navigable rivers is in the state to be held and controlled by the state for the benefit of the public and for public use.

The title being in the appellant railroad company to the Newell tract bordering on the Snake and to said block 2 bordering on the Snake and Clearwater rivers, the railroad company has the right of access to said rivers, and such right precludes any unreasonable obstruction of its access to the navigable waters, and precludes any title of a private or proprietary nature between it and the center of said streams. The appellant company has the legal title to the Newell tract and said block 2, and is the riparian owner wherever those tracts touch the banks of said rivers. Appellant has the right of a riparian owner as well as the right of other citizens of access to and egress from said navigable waters, subject to the right and easement of other citizens of the state to a navigation of said waters.

The title to the beds of said streams, referred to as the waterfront, is still in the state of Idaho, and therefore the judgment and decree of the district court quieting the title to the beds of said streams to the center thereof in the mayor-trustee for the benefit of the inhabitants of the city of Lewiston must be reversed and the cause remanded to the court, with directions to make new findings of fact and enter judgment and decree in accordance with the views expressed in this opinion since the parties are not entitled to a decree quieting the title to the beds of said streams in them or either of them.

Costs are awarded to appellant.

Budge and Morgan, JJ., concur.

(December 14, 1916.)

### ON PETITIONS FOR REHEARING.

**21.** *Held,* that under the provisions of Ordinance No. 218 of the city of Lewiston, granting to the Northern Pacific Railway Company, its successors and assigns, the use of A street in said city, said corporation is granted an easement which is irrevocable as long as said railway company or its assigns occupy said street for railway purposes, and that said railway company is entitled to a decree in the lower court, decreeing to it and its assigns the right to the use of said A street for railway purposes, with the rights of a riparian owner from the intersection of said A street with Fifth street to the easterly end of block 1.

SULLIVAN, C. J.—Both the Northern Pacific Railway Company and the city of Lewiston have filed petitions for rehearing in this case.

It would appear that the court in its former opinion apparently left a few points a little obscure. However, we do not think it necessary to grant a rehearing in this matter.

(1) Counsel for the Northern Pacific Railway Company first contends that in so far as the case against Hirzel is concerned, it might be urged before the trial court in making other findings, as required by the former opinion of this court, that there was an intention to hold that said island contained land that might be subject to entry under the land laws of the United States. It was not intended to so hold. The opinion of the court was that the island claimant not having appealed, the findings of the court below to the effect that the island contained no land proper, nor anything other than river-bed material, will be accepted and found in any new findings that may be hereafter made by the trial court.

(2) Under the provisions of Ordinance 218, which ordinance vacated A street for the use of the railway company, its successors and assigns, the railroad company is granted an easement and not a mere license, which easement is not revocable so long as the railway company, or its assigns, occupy said

street for railroad purposes, and the trial court erred in holding that the grant to appellant was a license only.

(3) The court intended to hold, and holds, that the westerly side of the Newell grant and block 2 of the town site of Lewiston is bordered by Snake river.

(4) In regard to riparian rights along the Clearwater river. As we understand the evidence and the plat of the city of Lewiston made by E. B. True, quite a portion of said street opposite block 6 has been washed away by the Clearwater river, and Neukam has squatted on or near a part of that street, but that he has no rights there as against the Northern Pacific Railway Company. The railway company occupies the entire width of that street west from Fifth street. It appears that all of block 1 was washed away some years ago, although title to it is still claimed by a corporation not a party to this suit. The Northern Pacific Railway Company accordingly has riparian rights along said river up to the easterly end of said block 1.

When the Northern Pacific company came to Lewiston, it was granted the use of A street. That grant fixed the limit of the right of way to the entire width of said A street, to wit, eighty feet. Therefore, the appellant has the use of A street on the Clearwater river so long as it occupies said street for railway purposes, and that carries with it the right of access from said street from its intersection with Fifth street to the easterly end of Block 1, to the navigable water and a freedom thereof from any intervening private right.

(5) The court did not intend to hold in said opinion that there had been no general legislation in this state in regard to railways along the shores of navigable waterways, and the court did not intend to deny the effect of subd. 5 of sec. 2796, Rev. Codes, and where the court stated, "and no general law has been made by the legislature in regard to the disposition or proper control of such lands for the benefit of the public," we should have added, "except subd. 5 of sec. 2796, Rev. Codes." This exception should also include sec. 872, Rev. Codes, which section prohibits the construction of dams or booms unless they are constructed as provided by sec. 872, *supra.*

(6) Counsel for the city suggest that as they read the former decision of this court, there is no direct holding to the effect that Block 6 borders on Clearwater river, or that the railway company is a riparian owner of land north of block 6.

A street lies bordering on and north of said block 6 and the northerly side of said street borders on Clearwater river. The city of Lewiston having granted an easement of said entire street to the railway company, the railway company has the riparian rights which attach to the northerly side of said street which borders on said river, the intention being to hold that the Northern Pacific Railway Company has riparian rights on Clearwater river from Fifth street westerly to the easterly end of said block 1.

(7) It was contended by counsel for respondent that the legislative assembly of the territory of Idaho in 1881 amended the city charter of Lewiston (Sess. L. 1881, p. 384), whereby the power was conferred upon the city to sell or lease the property of the city; also to lease the waterfront to any person, steamboat or railroad company, for the purpose of erecting warehouses, wharves or wharf boats, or for any other purpose which they might deem proper, and that said act has never been repealed and is still in force.

It appears that in 1907 (Sess. L. 1907, p. 349) said act of 1881 was amended. By that act all of the provisions of the Lewiston charter and the provisions of said act of 1881, authorizing the sale or lease of waterfronts in said city, are entirely omitted. The regulation of wharfage is retained in sec. 66 of said act of 1907, but said act does not give the city power to sell or lease the waterfront, and only gives such city the power of sale and lease of the real property of the city and streets and highways and property dedicated to any specific public use. While a river is a highway, the term "highway," as used in said act, does not include a water-way. (*Grice v. Clearwater Timber Co.*, 20 Ida. 70, 117 Pac. 112.) The waterfront on those rivers was not properly dedicated to any specific public use by the city, and as the title to the beds of all navigable streams is in the state, the city would not have the right to dedicate it to any particular public use that would

in any way interfere with the navigation of the rivers, since a dedication of property to a public use must be made by the owner or by his authority.  The appellant is entitled to a decree, decreeing to it and its assigns the right to the use of A street, so long as it uses the street for railway purposes, with rights of a riparian owner from the intersection of said A street with said Fifth street to the easterly end of said block 1.

With the foregoing additions, the original opinion is affirmed and a rehearing denied.

It is contended by counsel for respondent that under all of the facts of this case, each party should pay its own costs on appeal.  Upon a reconsideration of this matter, the court has concluded that it will be only right and proper for each party to pay its own costs on this appeal, and it is so ordered.

Budge and Morgan, JJ., concur.